McCLINTOCK *et al.*, Plaintiffs in Error, v. CURD *et al.*, Defendants in Error.

*Practice.*—In a suit under the statute to test the validity of a will admitted to probate, the party attacking the will holds the affirmative, and is entitled to open and conclude the case. But the Supreme Court will not reverse the judgment of the court below for refusing to the plaintiff such opening and conclusion, unless it appear that manifest injury has been done to the party thereby. (Farrell's Adm'r v. Brennan's Adm'x, ante, p. 328, approved.)

*Depositions.*—Either party to a suit has the right to read in evidence the depositions taken by the opposite party, if offered at the proper time, without giving previous notice of his intention.

*Instructions.*—It is error to give instructions to the jury which there is no evidence to support.

*Will—Sanity of Testator.*—Upon an inquiry as to the sanity of the testator, the proper question to submit to the jury is, " Were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged at the time when he executed the will ?"

### *Error to Callaway Circuit Court.*

The facts are sufficiently stated in the opinion. The following instructions given do not appear in the opinion :

By the court :

3. If the jury find that the testator was a young man of weak, disordered intellect ; was so impaired and weakened from any cause as to subject him to the dominion, control, or influence of those with whom he lived ; and the jury find that they, or any of them, exercised such influence and control over his mind in the disposition of his property as to destroy his liberty and free will, and cause it to be made to suit their wishes, and not his, this is such an undue influence as will invalidate the will of the testator, and the verdict should be against the will.

Asked by defendant :

1. Before the jury can find that the will of Thomas Freeland is invalid by reason of undue influence exercised over the testator Thomas Freeland, they must be satisfied from the evidence that a dominion over the free will of the testator was acquired, destroying his free agency, and constraining

him to do, against his free will, what he was not able, by reason of such influence, to resist; and that their influence was operating upon the testator at the time of the execution of the will.

Asked by plaintiff:

3. If the jury find any evidence of fraud or imposition in procuring the execution of the will, they may consider the dispositions of property actually made in the will, to guide their judgment in making up their verdict.

The following instructions, asked by plaintiff, were refused:

1. A disposing mind and memory is a mind and memory which have the capacity of recollecting, discerning and feeling the relations, connections and obligations of family and blood; and unless the jury find from the evidence that Thomas R. Freeland, at the time of the execution of the will, had such mind and memory, they must find against the will.

2. If the jury find from the evidence that the whole or any part of the will of Thomas R. Freeland was suggested to him by any other person and adopted by him, such adoption must not have been the result of incapacity, weakness of mind, fraud, circumvention, or undue influence; and whether it was so, is for the jury to determine from all the facts and circumstances in the case.

4. To sustain the will, the jury must find it to be the will of Thomas R. Freeland. If it be the will of another, to which he assented from mere habit, and that the habit was produced by prostration of both body and mind, it cannot in any sense of the word be considered as his will, and ought not to be sustained; and of this the jury must judge from all the circumstances in the case.

7. If the jury find from the evidence that Thomas R. Freeland, at the time of the execution of the will, from natural imbecility, disease, or any other cause, was incapable of managing his own affairs, they must find against the will.

8. Should the jury find from the evidence that Thomas R. Freeland, at the time of the execution of the will, had a mind of sufficient sanity for general purposes, and of suffi-

cient soundness and discretion to regulate his affairs in general; yet, if they further find that he was weak in body and mind, and under the dominion or influence of those about him, sufficient to prevent the exercise of such discretion, and that such dominion or influence did prevent the exercise of such discretion in the execution of the will; and of this they must judge from all the circumstances in the case.

*Ansell*, for plaintiff in error.

I. The court erred in refusing the plaintiffs the opening and closing argument in the cause. (Taylor v. Wilburn, 20 Mo. 306.)

1. The burden of proving unsoundness or imbecility of mind in the testator is upon the party impeaching the validity of the will for that cause. (2 Greenl. § 689; 1 Greenl. p. 93, § 78—p. 96, § 81.)

2. The question is not who denies, or who affirms the issue; the burden here is upon the (caveators) plaintiffs. They do not deny the execution of the will, but set up insanity, and such an influence exercised over the mind of the testator as will vitiate the will. (See remarks of Judge Clayton in Chandler v. Ferris, 1 Harr. 454, 461.)

3. On a trial where the sanity of the testator is in question, and where parties setting up and insisting on the validity of the will have the opening and closing of the case, they must prove the due execution of the will and the sanity of the testator; but where the parties opposed to the will admit the formal execution of the will, and allege insanity and undue influence, and have the opening and closing of the case, the *onus probandi* falls on them to show the insanity and undue influence over the testator. (Same case.)

4. After the formal proof of the paper, the executor might fold his arms until the plaintiffs produced something to overthrow his case, which is *prima facie* established by the production of the will and the inference of law in favor of sanity. We are of the opinion that the plaintiffs have the open-

ing and closing. (Clayton, C. J., in Chandler v. Ferris, 1 Harrington, 461.)

5. From the nature of the issue, the *onus probandi* is with the defendants (now plaintiffs). The execution is proved, and the only question is as to the testator's insanity. The law presumes sanity until the contrary is proved. We are of the opinion that the defendants (plaintiffs) have the right to conclude. (*Per curiam*, Bell v. Buckmaster; Chandler v. Ferris, *n.;* 1 Harr. 460.)

II. The court erred in refusing plaintiffs permission to read the deposition of W. H. Russell, which was on file among the papers in the cause, and taken by defendants as evidence in chief, and also parts of it in rebuttal of evidence offered by defendants for the reason given by the court for excluding the same, " that plaintiffs should have given defendants notice of their intention to use it before the trial." (Greene v. Chickering & McRay, 10 Mo. 109.)

III. The first instruction of the court ought not to have been given. It, in effect, tells the jury, that unless he was an idiot, he was competent to make a will; one lingering ray of intellectual light is all that is required.

The second instruction of the court ought not to have been given for the same reason. It is more objectionable than the first.

If there was no evidence offered tending to prove undue influence, the third instruction of the court was unnecessary; but if Russell's deposition had been given in evidence, as it ought to have been, the third instruction would have been properly given.

The fourth instruction of the court may be good law and good doctrine in the lunatic asylum; but it is thought that when a man is proven insane upon one subject, he is not far from the dividing line of sanity and insanity upon all other subjects.

The fifth instruction given by the court is a bird of very equivocal plumage and of doubtful gender, of French origin. The court will not recognize perverted feelings, unaccom-

panied with mental delusion, as constituting insanity, which is nothing more or less than saying that moral insanity is not recognized by law.

IV. The first instruction asked by plaintiffs and refused by the court is undoubtedly law. To say that a disposing mind and memory is anything less than a mind and memory which have the capacity for recollecting, discerning and feeling the relations, connections, and obligations of family and blood, would be to substitute drivelling imbecility in the place of sane and perfect memory, and to confound and obliterate all landmarks between sanity and insanity. (See Den v. Johnson, 2 South. 454.)

The seventh instruction asked by plaintiffs was improperly refused by the court. If Thomas R. Freeland, at the time of the execution of the will, was, from imbecility, disease, or any other cause, mentally incapable of managing his own affairs, he was incapable of making a valid will. He ought to have had a disposing memory, so that he was able to make a disposition of his property with understanding and reason ; and that is such a memory as the law calls sane and perfect memory. (Boyd v. Eby, 8 Watts, Pa., 70 ; Davis v. Calvert, 5 Gill. & John. 269 ; Newhouse v. Godwin, 17 Barb., N. Y., 236.)

Moral insanity accompanied with delusion.—Delusion has generally been laid down as essential to insanity ; that is, the fancying things to exist which can have no existence, and are impossible, according to the nature of things—as that trees will walk and statues nod—and which fancy no proof or reasoning will remove. (Shelford on Lunacy, 293.)

Whenever a person once conceives something extravagant to exist which still has no existence whatever, and he is incapable of being permanently reasoned out of that conception, he is said to be under a delusion, and delusion in this sense of it, is almost, if not altogether, a convertible term with insanity. (Den v. Clark, 5 Halst. 79 ; Stanton v. Witherspoon, 16 Barb., N. Y., 259.)

*C. H. Hardin,* for defendant in error.

I. The court properly permitted the defendants to open and close the case. The only issue under the statute being whether the writing was the will of Thomas R. Freeland or not; the question as to proof of insanity or undue influence being simply subordinate inquiries which conduced to prove the issue, " will or no will." (Cravens v. Faulconer, 28 Mo. 19 ; Withington v. Withington, 7 Mo. 589 ; 1 Greenl. Ev. 77 ; Hawkins v. Simms, 13 B. Monroe, 269 ; 8 Conn. 261 ; Brooks v. Barrett, 7 Pick. 9 ; 8 Greenl. 42 ; Phelps v. Hartwell, 1 Mass. 71, 73 & *n.;* Buckminster v. Perry, 4 Mass. 593 ; Riggs v. Wilton, 13 Ill. 15 ; Potts v. House, 6 Ga. 324 ; 2 Gray, 524 ; Cilley v. Cilley, 34 Me. 162 ; Barry v. Butlin, 1 Curt. 637 ; Harris v. Ingledew, 3 Peer Wms. 93.) But, assuming even that the court committed error in allowing defendants the opening and conclusion, this court will not reverse for such cause. (Wade v. Scott, 7 Mo. 514, 515 ; Reichard v. Manhattan Life Ins. Co., 31 Mo. 518.)

II. The court committed no error in excluding the deposition of William H. Russell when offered by the plaintiffs after they had closed their case, and the defendants had also closed their evidence in rebuttal. The plaintiffs, of course, had a right to read the deposition at the proper time as part of their case—as their own deposition. (10 Mo. 110; Young v. Smith, 25 Mo. 341 ; Pearce v. Dansforth, 13 Mo. 360 ; State v. Locke, 26 Mo. 603 ; 14 Mo. 348 ; Wells v. Sawyer, 21 Mo. 354.)

III. There was no error in the giving or refusing of instructions, or the refusal to sustain the motion for a new trial. (30 Mo. 191 ; Gunsolis v. Gearheart, 31 Mo. 585.)

BAY, Judge, delivered the opinion of the court.

This was a proceeding under our statute of wills to contest the validity of the will of Thomas R. Freeland, deceased. The petition alleges two grounds upon which the plaintiffs rely to set aside the will. First, that at the time of its execution said Freeland was not of sound and disposing mind.

McClintock v. Curd.

Second, that the same was obtained by fraud and undue influence exercised upon the mind of said Freeland.

These allegations are traversed by the answer. Upon the trial of the cause, at the April term, 1861, of the Callaway Circuit Court, the jury found the issues for the defendants; whereupon plaintiffs moved for a new trial, which motion was overruled, and the cause is brought here by writ of error.

It is insisted by the plaintiffs that the court below erred in allowing the defendants the opening and closing of the testimony and argument. This point was made in Farrell v. Brennan et al., decided at the last March term of this court, and we held in that case that the *onus* was upon the party attacking the will, and that he was entitled to open and conclude; but as it was a question of practice, we would not reverse for error in the court below relating thereto, unless satisfied that the party had been materially prejudiced by the ruling of the court.

The next ground of error assigned is that the court refused permission to the plaintiff to read in evidence the deposition of William H. Russell, taken in behalf of the defendants, and by them filed in this cause. The offer to read this deposition was not made until after defendants had closed their case in rebuttal, and the court in the exercise of its discretion might have well refused upon this ground; but the reason assigned by the court, as appears from the bill of exceptions, was the omission of plaintiffs to notify defendants, before the trial, of their intention to use the deposition. While we are not disposed to question the action of the court with reference to the mode in which it exercised its discretion, still we must be permitted to say that the reason assigned is both novel and untenable. We know of no law or practice which requires such notice to be given. A deposition taken by one party to a cause may be used by the other, notwithstanding it is not read by him at whose instance it was taken, for, after it is filed in the cause, the parties are equally entitled to the use of it. (Greene v. Chickering & McKay, 10 Mo. 109.) But the case in which such notice is required to be given is

where a party offers to read a deposition taken in a former suit between the same parties. In such a case, this court held, in Samuel v. Withers, 16 Mo. 541, that notice of its intended use should be given, or it should be filed anew in the suit, so that the party against whom it was intended to be read may have knowledge thereof. After reading the deposition of Russell, it is difficult to conceive for what purpose it was offered, unless it was to obtain, in anticipation of its exclusion, a technical ground for reversal, for there is nothing in the deposition which could, in the slightest degree, operate to the advantage of the plaintiffs; on the contrary, its tendency is to sustain the will. Russell was the uncle of the testator, and knew him from his infancy. In conversations had with him some years prior to his death, the testator expressed an intention to dispose of his property as the will provides, and Russell thus speaks of his mental condition at that time: "I state, without the slightest qualification, that his mind seemed to be as clear and as capable of comprehending his business affairs as I had ever seen it at any time from its infancy. There was no excitement; nothing was evinced either in manner or expression that made the slightest impression on my mind that he was not just as capable of directing and disposing of his property as any man in the land."

It is, therefore, very evident that the exclusion of this deposition in nowise prejudiced the plaintiffs.

The last ground of error is in reference to the giving and refusal of instructions; and to determine whether the court erred in this respect, it may be well enough to refer to the rule laid down in such cases for the guidance of the jury. In Harrison v. Rowan, 3 Wash. C. C., p. 585, Justice Washington, in his charge to the jury, thus speaks of the requisite capacity to make a will:

"He must, in the language of the law, have a sound and disposing mind and memory. In other words, he ought to be capable of making his will with an understanding of the nature of the business in which he is engaged; a recollection

of the property he means to dispose of; of the persons who are the objects of this bounty, and the manner in which it is to be distributed between them. It is not necessary that he should view his will with the eye of a lawyer, and comprehend its provisions in their legal form. It is sufficient if he has such a mind and memory as will enable him to understand the elements of which it is composed—the disposition of his property in its simple forms."

Sergeant, J., in delivering the opinion of the Supreme Court of Pennsylvania, in Boyd v. Eley, 8 Watts, 66, says: " The rule of law in regard to wills is, that the memory which the law holds to be a sound memory, is when the testator hath understanding to dispose of his estate with judgment and discretion, which is to be collected from his words, and actions, and behavior at the time."

Lord Kenyon, in his address to the jury in Greenwood v. Greenwood, 3 Curteis, Appendix, remarks: " I take it, a mind and memory competent to dispose of his (the testator's) property, when it is a little explained, perhaps may stand thus: having that degree of recollection about him that would enable him to look about the property he had to dispose of. If he had a power of summoning up his mind so as to know what his property was, and who those persons were that were the objects of his bounty, then he was competent to make his will."

Jarman, in his Treatise on Wills, vol. 1, p. 51, after referring to the leading cases upon this subject, comes to the conclusion that the question, in its most simple and intelligible form, should be thus stated: " Were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged at the time when he executed his will ? "

This, in our opinion, is the best form in which the question can be submitted to a jury; and when the jury shall have heard the opinions of witnesses who have observed the conversation, manner, and deportment of the person whose sanity is in question, but little difficulty will arise in reaching a

just and correct conclusion. But if the court should undertake to enlighten the jury by instructing them with reference to the different phases of insanity, such as moral and intellectual mania, with the divisions and subdivisions adopted by writers on medical jurisprudence, it would only result in confusing their minds and leading them into a field of inquiry wholly unnecessary to an intelligible solution of the question before them. The court should, therefore, submit the question in its most simple form, and avoid, as far as possible, any inquiry not bearing directly upon the issue made by the pleadings. The practice of giving instructions upon abstract propositions of law, in the absence of any testimony to which they can apply, is equally reprehensible. Thus, in the case under consideration, instructions were given with reference to undue influences exercised upon the mind of the testator; yet it is expressly stated in the bill of exceptions that no evidence was offered on either side tending to prove undue influence on the part of any person over the testator. Instructions upon the same subject were asked by plaintiff and refused, and such refusal, notwithstanding the said statement in the bill of exceptions, assigned in this court as error.

The court, upon its own motion, gave the following instruction upon the first issue :

" The petitioners allege that the paper writing purporting to be the last will and testament of Thomas Freeland, in evidence before the jury, is not the last will and testament of the said Freeland, and defendants deny this."

1. The court, upon this issue, directs the jury that if they find from the evidence that the deceased, Thomas Freeland, at the time of executing said paper writing in evidence before them, was of sound mind, they will find for the will ; but if they find from the evidence that at the time of the execution of said will the said Thomas Freeland had not mind and memory sufficient to understand and comprehend the nature and character of the business he was engaged in, and the objects of the provisions contained in his will, the jury will find against the will.

2. Mere weakness or imbecility of mind is not sufficient of itself to set aside a will; but the unsoundness of mind sufficient to invalidate a will should be of such degree as to render the testator for the time being incapable of understanding that he was engaged in making a disposition of his property, and of comprehending the nature and kind of his property, and the persons who were intended to be provided for by his will.

4. If the jury find that the testator was, at the time of the execution of said will, laboring under partial insanity—that is, that he was insane upon one or more subjects, and sane and rational on all others—this will not be sufficient to invalidate his will, unless the jury are satisfied that the will was the direct offspring and result of one or more of the delusions under which the testator was laboring.

5. If the jury find that the testator was, at the time of the execution of the will in evidence, laboring *under moral insanity*, or a perversion of the moral feelings, this cannot affect the validity of the will, unless the jury are satisfied that said moral insanity was accompanied by an insane delusion, and the will was the offspring of said delusion; and unless the jury find that the will was executed under undue influence, as set forth in the third instruction, or they find that the testator, at the time of the making of the will, had not mind and memory enough to know what he was doing, and the effect of the dispositions made by his will, as set forth in the first and third instructions, they will find a verdict for the will.

Defendants' instructions:

1. The jury are bound to presume that Thomas R. Freeland was of sound mind, and capable of disposing of his property by will at the time the will was executed, unless from the evidence in the cause they find that he was insane, and that said will was executed while in that condition.

The plaintiffs then asked the following instructions, to-wit:

5. If the jury find from the evidence that Thomas R. Freeland had not a sound and disposing mind and memory at the time of the execution of the will in controversy, they

must find against the will; and this they must determine from all the circumstances in the case.

6. Although unsoundness of mind or undue influence is not to be presumed, but must be proved, yet direct proof is not required to establish the same; but the jury may arrive at the conclusion that Thomas R. Freeland's mind was unsound, or that he was unduly influenced in making his will, from the facts and circumstances in the case.

9. To sustain the will it is not sufficient that Thomas R. Freeland, at the time of its execution, had sufficient mind and memory to answer familiar questions, but he must have had a disposing mind and memory sufficient to enable him to comprehend and understand the character and amount of his property, and the persons or objects intended to be provided for by his will, and their relations to himself.

10. If the jury find from the evidence that Thomas R. Freeland, prior to the execution of the will, was insane, and incompetent to make a will, the law presumes such insanity and incompetency continued to the time of making the will, unless such insanity and incompetency were accidental and temporary in their nature; and, unless accidental and temporary, the defendants must show sanity and competency at the time of the execution of the will.

Those instructions, taken as a whole, present, in our opinion, the law of the case fairly to the jury. The jury were in effect called upon to say whether, at the time of the execution of the will, said Freeland had a sufficient mind and understanding to dispose of his estate with judgment and discretion. Several of plaintiffs' refused instructions are unobjectionable, but they were substantially given in others. Upon the whole case, we see no such error in the court below as will justify us in disturbing the verdict.

The other judges concurring, the judgment will be affirmed.