YOUNG, *Appellant*, v. RIDENBAUGH.

1. **Instructions** are intended as guides for the jury, and should not be couched in technical language, but in plain, unambiguous terms, intelligible to the unlearned. They should not be so drawn as to make a legal argument necessary in order to ascertain what issues are submitted to the jury.

2. **Wills**: EVIDENCE. When a question of testamentary capacity is submitted to a jury, it is proper to put them in possession of all the facts relating to the condition of all the property of the deceased, and for this purpose evidence is admissible to show what amount of taxes are imposed and paid upon it.

3. **Testamentary Capacity.** In order to make a valid will, a testator must have sufficient understanding to know what disposition he wishes to make of his property and to determine whether the will makes that disposition; but he is not required to know fully the legal effect of all its provisions upon the interests and estates devised.

4. ————. The unsoundness of mind sufficient to invalidate a will need not be such as to render the testator incapable of understanding that he is engaged in making a disposition of his property; it is enough if he is incapable of comprehending the nature and extent of his property and of knowing what persons are intended to be provided for by the will.

5. **Nature of Proceeding to Set Aside a Will**: WEIGHT OF EVIDENCE: PRACTICE IN SUPREME COURT. A proceeding under the statute to set aside a will is a proceeding at law. An appellate court will not reverse a judgment in such a proceeding on the ground that the jury found against the weight of evidence.

*Appeal from Buchanan Circuit Court*—HON. JOSEPH P. GRUBB, Judge.

*A. W. Slayback* for appellant, argued that the burden was upon the defendants to prove that the testator had sufficient capacity to make a will, and that they had failed to do this, citing *Clarke v. Fisher*, 1 Paige, 171; Swineburne, pt. 2, § 25, pl. 5; 1 Redfield on Wills, 96, 130–132; *Delafield v. Parish*, 25 N. Y. 35; *Parton v. Williams*, 2 Curteis 530; *Parke v. Ollatt*, 2 Phillim. 323; *Barry v. Butlin*, 2 Moore Privy C. 480; *Shropshire v. Reno*, 5 J. J. Marsh. 91;

*Marsh v. Tyrrell*, 2 Hagg. 122; *Baker v. Batt*, 2 Moore Privy C. 317; *Crowninshield v. Crowninshield*, 2 Gray 526; *Den v. Johnson*, 2 Southard 454; *Boyd v. Eby*, 8 Watts 72; *Eaton v. Eaton*, 8 Vroom 108; *Benoist v. Murrin*, 58 Mo. 307; *Barry v. Butlin*, 1 Curt. Ecc. 638; *Chaffee v. The Bapt. Miss. Conv.*, 10 Paige 86; *Aurand v. Wilt*, 9 Barr (Pa.) 54; *Mowry v. Silber*, 2 Bradf. 133; *Lake v. Ranney*, 33 Barb. 49; *Tyler v. Gardiner*, 35 N. Y. 595; *Cravens v. Faulconer*, 28 Mo. 22; *Hindson v. Kersey*, 4 Burn Ecc. Law 85; *Kinlesid v. Harrison*, 2 Phillim. 549; *Collins v. Townley*, 21 N. J. Eq. 353; *Scribner v. Crane*, 2 Paige 147. The deceased was of unsound mind as shown by the evidence. Flint on Prac. Med. 158; 5 Liemssen Cyc. Prac. Med. 101; 1 Niemeyer Prac. Med. 175; Da Costa on Medical Diagnosis, 54; 1 Redfield on Wills, 63, 67 (note); Taylor Med. Jur. 629; 2 Greenlf. Ev., § 689; 1 Beck Med. Jur. 727, 729, 740. *Stanton v. Weatherwax*, 16 Barb. 259; *Woodbury v. Obear*, 7 Gray 467. If the defendants allege that the will was executed during a lucid interval, they assume the burden of proof of that. *Harden v. Hayes*, 9 Penn. St. 151; *White v. Wilson*, 13 Ves. 89; *Brogden v. Brown*, 2 Addams 445; *Atty.-Gen. v. Parnther*, 3 Brown Ch. C. 444; *McTaggart v. Thompson*, 14 Penn. St. 149; *Parish v. Parish*, 42 Barb. 274; Swineburne, pt. 2, § 4; Combe's Case, Moore, 759; *Mountain v. Bennett*, 1 Cox 353; *Greenwood v. Greenwood*, 3 Curt. Appendix II; *Harwood v. Baker*, 3 Moore (Jud. P. C.) 282; 2 Greenlf. Ev. 689; Ex parte Holyland, 11 Ves. 11; *Cartwright v. Cartwright*, 1 Phillim. 100; Ray's Med. Jur. of Insanity, §§ 402-410; *Robinson v. Adams*, 62 Me. 369; *Dennis v. Weeks*, 51 Geo. 24.

The will should have been set aside because it was dictated by Colhoun and was his will—not Young's. 1 Redf. Wills 131. He was the confidential friend of deceased, and the will conferred great benefits on him. In *Yosti v. Laughran*, 49 Mo. 594, this court held that donations to persons sustaining the relation of confidential

friend and adviser of the donor will not only be watched with great jealousy, but will be set aside on the discovery of the least fraud. Every presumption will be against them. See also *Harvey v. Sullens*, 46 Mo. 147; *Garvin v. Williams*, 44 Mo. 475; *Cadwallader v. West*, 48 Mo. 483; *Turner v. Turner*, 44 Mo. 535. The evidence as to taxation of unimproved real estate should have been admitted. O'Hara on Wills, 16, 55.

*Silas Woodson* and *Ben. Loan* for appellants, argued that the first and fourth instructions given for the defendants ignored the question of undue influence, and were, therefore, improper. *Iron Mountain Bank v. Murdock*, 62 Mo. 73; *Raysdon v. Trumbo*, 52 Mo. 35; *Rankin v. Rankin*, 61 Mo. 297; *Ried v. Piedmont & Ar. Life Ins. Co.*, 58 Mo. 422. The essential requisites of a valid will under our laws, are :

(a) That it must be made by a person possessed of testamentary capacity sufficient to make a will at the time it is executed.

(b) That it must be the product of his mind and be dictated by him, and must not be dictated and written by others.

(c) That it must be his deliberate, voluntary act, free from all undue influence. *McClintock v. Curd*, 32 Mo. 420; *Harvey v. Sullens*, 46 Mo. 152.

Old and infirm persons, whose minds are so clouded and disordered that they are incapable of attending to any business, have not sufficient capacity to make a will. *Harvey v. Sullens*, 46 Mo. 152.

The instructions given for the defendants did not properly submit these questions to the jury.

*Hall, Vories, Vineyard* and *Ramey* for the infant respondents.

HENRY, J.—This was a suit under the statute brought

by plaintiff, a son of George Young, deceased, against John Williams and John Colhoun, and the daughter and grandchildren of said deceased, to have his will, which had been previously probated, set aside. The grounds upon which the probate of the will is contested are that it was procured by undue influence, and that George Young had not sufficient mental capacity to make a will. The will was made October 30th, 1874. George Young was then seventy-five years of age, he had for several years been in failing health, and the death of his son-in-law, Mr. Ridenbaugh, to whom he seems to have been greatly attached, so deeply affected him that he never recovered from the shock, but in a few days took his bed and in about a week after the death of Mr. Ridenbaugh had an attack of pneumonia, which in seven or eight days terminated fatally. His death occurred on Sunday, and on the previous Monday he sent for Allen H. Vories, Esq., Jno. Colhoun and Jno. Williams, to have his will prepared. Mr. Vories and the other gentlemen remained a few minutes, during which, Mr. Vories testified, " Mr. Young informed them what disposition he wished to make of his property, and they left with an understanding that they would return at 12 o'clock with the will. They returned at 12 o'clock, and after the will was read to him Mr. Young signed it, and the others, with Geo. T. Hoagland, attested it as witnesses. The following Friday the same parties were again sent for by Mr. Young, who desired to make a change in the will; and Mr. Vories took the one already executed, wrote another, making the changes suggested, which was the same day signed by Mr. Young and attested by the same parties as witnesses.

The Sunday following, Mr. Young died. Mr. Vories and the other attesting witnesses testified that Mr. Young was in his right mind when the will was signed by him, and that he seemed to understand perfectly the business he was transacting. On the other hand, the attending physician, Dr. Bertram, testified that he was called to see Mr. Young on Tuesday, (the day after the will was exe-

cuted,) found him with pneumonia, his lungs very much inflamed; after that saw him every day till his death. At his age the pneumonia he had is fatal. On Tuesday the inflammation was so great witness knew he must have been sick on Monday before. Friday morning his lungs showed paralysis. He was delirious; witness had to wake him to talk to him. He was in a stupor and spoke with great difficulty. Men at his age with pneumonia are always delirious. From the first time witness saw him, never saw him in a condition when he could do business. His mind was not as strong on Friday after the paralysis as on previous days. He was sinking rapidly, and witness told Mr. Colhoun and the other gentleman that he would probably not live an hour, though he might possibly live several days. Mrs. Ellen Kercheval testified that after Mr. Ridenbaugh's death she was at Mr. Young's house all the time, except one or two nights, until his death; that about two weeks before his death he was taken with a chill and high fever, and never rallied from the time witness saw him. After he had the chill, at no time did she consider him in his right mind. A few days before his death he talked about a contract he had made with a man to kill bull-frogs for him at ten cents apiece. Mrs. Sparks sat up with him the Thursday night before his death. He talked about bull-frogs; talked wild all night; did not know witness. The next morning he did not know her. Friday night he was no better. Mr. Juslee sat up with Mr. Young Friday and Saturday nights; says he was flighty. Mrs. Charles Thompson saw him every day in his last illness. The day after Mr. Ridenbaugh was buried Mr. Young seemed alarmed; was tremulous and weak. He grew worse and sank rapidly till he died. He talked at random on every subject, and not sensibly about anything. He would mistake witness for Mrs. Ridenbaugh. On Thursday and Friday he was in a dying condition. Mrs. Triplett saw Young on Thursday before he died; at times was rational; saw him frequently from Tuesday. His mind was feeble and wandering;

talked about frogs; did not know witness; he never seemed himself after Mr. Ridenbaugh's death.  Mr. C. H. Thompson's testimony was to the same effect.  Mrs. Austell saw Mr. Young after Mr. Ridenbaugh's death, and thought he was a crazy man.  He asked witness if Mr. Ridenbaugh was dead?  She said yes.  He said, no; he is asleep.  He walked the floor and wrung his hands, and told her to go and wake Mr. Ridenbaugh.

Mrs. Ridenbaugh testified that Mr. Vories dictated the will, saying, " Major, this had better be so and so, had it not?"  My father acquiesced.  Mr. Vories suggested that I, being a widow, should have more than my brother; that I should have the home place in town and the money.  My father simply acquiesced.  On Monday, while Mr Young was giving Mr. Vories instructions in regard to his will, Mrs. Ridenbaugh testified that " Mr. Colhoun rose from his chair and said, 'I do not wish to give security.'  Mr. Vories aroused my father, told him what Mr. Colhoun said, and asked if he should be required to give security; my father shook his head."  Mr. Vories testified that Mr. Young stated as a reason for changing the will made on Monday that he thought Mrs. Ridenbaugh and her son George had been provided for by insurance on Mr. Ridenbaugh's life, but that as no such provision had been made, he wished to change the will so as to provide for them, justice not having been done to his daughter and her son in the will.  To the same effect is the testimony of Mr. Colhoun, who stated also that Mr. Young said he wished further to provide for her, as she would have to pay taxes on much unproductive property.  Dr. Ellingood testified that Mr. Young told him he intended to fix his property so as to make his children comfortable while they lived; that they didn't know the value of money.  He seemed anxious that they should be provided for.

It is necessary to give this synopsis of the evidence in order that the points relied upon for a reversal of the judgment may be understood.  The estate of George Young

consisted of about $60,000 in notes and money, two farms and a ten-acre tract near St. Joseph, in Buchanan county, a number of improved and one or two unimproved lots in St. Joseph, and some lots in the city of Louisville, Ky. To his son George, the plaintiff, he gave for his life the land in Buchanan county; to his grandson he gave the Louisville property; to Mrs. Ridenbaugh, for her life, he gave the lots lying in St. Joseph. He also bequeathed to the plaintiff all the mules, horses, stock, farming utensils, and other things on the home place, as his absolute property. The notes and money were in the possession of John Colhoun and John Williams, who were his confidential friends, and had been for some time managing for him that part of his business, and by his will they were to remain in their hands without security from them, to be by them loaned out on interest; one thousand dollars of the interest to be appropriated annually for the maintenance, support and schooling of his grandchildren, the children of Mrs. Ridenbaugh, and the balance to Mrs. Ridenbaugh during her natural life, to enable her to pay taxes on the property devised to her, and for the support and maintenance of herself and family. The evidence showed that it was worth $1,000 to manage the trust fund committed to Colhoun and Williams; that the taxes amounted to $4.85 per hundred dollars. Plaintiff offered to prove that on the city property devised to Mrs. Ridenbaugh she had paid $800 taxes for the year 1874, but the court excluded the evidence from the jury.

The court submitted to the jury an issue directing them to "say in their verdict whether the writing produced and alleged by the infant defendants to be the last will and testament of George Young, deceased, is the last will of the said George Young or not." For the plaintiff the court gave the following instructions: 1. "That unless they believe, from the evidence, that at the time the testator, George Young, signed the paper alleged to be his last will and testament, he was of sound mind and disposing

memory, and able to understand the business in which he was engaged, and comprehend and understand the provisions of said paper as read to him just before signing the same and publishing it as his last will, and to comprehend the provisions made for the devisees therein respectively, they will find that said paper is not the last will and testament of George Young, deceased." 2. "If they believe, from the evidence, that the paper purporting to be the last will of George Young does not dispose of the property mentioned therein to the persons and as said Young intended and designed at the time he signed said paper, then they will find that it is not the last will of George Young." And the court, for the plaintiff, refused the following instruction: 3. "If they believe, from the evidence, that the provisions of said paper, purporting to be the last will of George Young, or any of them, were dictated and incorporated into said will by any other person than the testator, and that, at the time of signing said paper, he did not fully comprehend and understand said provisions and the effects thereof upon the interest and estate devised to each and all of the devisees in said paper, purporting to be his last will, then the jury will find said paper not to be his last will."

For defendants the court gave the following instructions: 1. That if they believe, from the evidence, that the deceased, George Young, freely signed and executed the paper writing read in evidence as and for his last will and testament, and that A. H. Vories, John Colhoun, John Williams and George T. Hoagland, or any two of them, attested the same by subscribing their names as witnesses thereto in the presence of said George Young, and if they further believe, from the evidence, that at the time of said signing, execution and attestation said George Young had sufficient capacity, as defined by the other instructions of the court, to make a will, they will find said paper writing to be his last will, and answer the issue submitted to them in the affirmative. 3. If the jury believe, from the evi-

dence, that the deceased, George Young, signed and exe-
cuted the paper writing read in evidence as and for his last
will, and that at the time he so signed and executed the
same, his mind and memory were sufficiently sound to en-
able him to know and understand the business in which
he was engaged, and that he had a clear conception of the
general nature and extent of his property and the disposi-
tion he was making of it, then he had a sound mind and
disposing memory within the meaning of the law.    4.
Although the jury may believe, from the evidence, that at
different times prior and subsequent to the paper writing
read in evidence the mind of the deceased, George Young,
was so clouded or disordered from physical suffering, or
infirmity, or from the use of stimulants or drugs, or from
any other cause, that he was incapable of transacting intel-
ligently any business, yet, if they further believe, from the
evidence, that he did freely and from conviction sign and
execute said paper writing as and for his last will, and that
the same was attested by A. H. Vories, John Colhoun,
John Williams and George T. Hoagland subscribing their
names thereto, in the presence of said George Young, as
witnesses, and that he, George Young, at the time of the
signing, execution and attestation of said paper writing
had sufficient capacity, as defined by the other instructions
of the court, to make a will, they will find said paper
writing to be his last will, and answer the issue submitted
to them in the affirmative.    6. Mere weakness of mind is
not of itself sufficient to set aside a will, but the unsound-
ness of mind sufficient to invalidate a will should be of
such a degree as to render the testator, for the time being,
incapable of understanding that he was engaged in mak-
ing a disposition of his property, and of comprehending
the nature and extent of his property and the persons
who were intended to be provided for by his will.    7.
Under the laws of the State of Missouri a parent has the
right in his will to give a small portion of his property to
one child and all the balance to another, or to give all his

property to one child to the exclusion of all others, or to give his entire property to strangers to the exclusion of all his children. And if the jury believe, from the evidence, that at the time said writing, purporting to be the last will of said deceased was made he was of sound mind and disposing memory, as defined in the foregoing instructions, then it is not the province of the jury to determine the propriety or impropriety of said bequest, or as to how much or how little said Young bequeathed to his children. 8. If the jury find for the infant defendants in this case, the form of their verdict will be as follows: " *George W. Young, plaintiff, v. Mary T. Ridenbaugh et al., defendants.* We, the jury, find that the paper writing read in evidence, and purporting to be the last will of George Young, deceased, is his last will, and we answer the issue submitted to us in the affirmative. ———, Foreman." 10. In order to warrant the jury in finding the paper writing read in evidence not to be the will of George Young, deceased, on the ground of undue influence exercised over his mind and will, they must believe, from the evidence, that that influence was of such a character and extent as to deprive him of free agency at the time of the making and execution thereof. 12. Although the jury may believe that the testator, George Young, deceased, had some insane delusions on some subjects, fancying things to exist which had no existence, and of whose existence he had no reasonable evidence, yet, if he had mind enough to know and appreciate his relation to the objects of his bounty, and the character and effect of the disposition of his will, then he had a mind sufficiently sound to enable him to make a valid will.

The jury found that the paper writing was George Young's last will and testament, and the court rendered a judgment accordingly, from which plaintiff appealed. Appellant's counsel contend that the first and fourth instructions for defendant ignored the issue of undue influence, and that the court refused the third instruction

1. INSTRUCTIONS.

asked by plaintiff, which presented that issue to the jury. Respondents insist that the first and fourth instructions do present that issue to the jury, and, further, that there was no evidence that the will was procured by the exercise of undue influence upon the testator. If the tenth instruction be the law, and it is not controverted, the question was submitted to the jury by the first and fourth instructions for defendant. If the undue influence that will avoid a will must be of a character to destroy the free agency of the person making it, then in no sense could it be said that he freely signed it if by undue influence the signature was procured, and in finding that he freely signed it the jury would, of course, find that he was a free agent when he signed it. But it requires a legal argument to ascertain that such an issue is embraced in the instructions. If the panel were composed of learned lawyers or metaphysicians, they would discover it, but unlearned jurors understand the word *freely* as standing in opposition to *compulsorily*, and might be misled by such an instruction to declare the paper writing to be the will if no compulsion were used to procure the signature of the party. Instructions are intended as guides for jurors, and should not be couched in technical language, but in plain, unambiguous terms, which may be comprehended as readily by the unlearned as the learned. The law does not require that jurors should be selected from the educated classes, but indiscriminately from good, discreet, substantial citizens. Conceding the correctness of the tenth instruction, the third and fourth instructions, taken in connection with it, present the question of undue influence, but in a manner well calculated to mislead a jury rather than to guide them to a correct conclusion.

That there was evidence of the exercise of undue influence to procure the making of the will, there can be no doubt. Upon its quality or quantity we will not comment, nor will we indicate what, in our judgment, should have been the verdict of the jury. It may be observed, how-

ever, that, in order to determine in any case whether undue influence was used to procure the execution of a will, the condition of the testator is to be taken into consideration. Influences that would not move a stout, hale man, in the possession of all his faculties, might be sufficient to entirely control one enfeebled with age and wasting with disease. At the bedside of George Young were his confidential, trusted friends, for whose benefit an important provision was inserted in the will, and, as one witness testified, at the suggestion of one of them, Mr. Colhoun. There was also evidence that the will was dictated by the lawyer who wrote it. Considering the relation between Colhoun and Williams and George Young, and his dying condition when the will was made, and the mass of testimony tending to show that for days he was in a stupor and delirious when aroused, with the other fact that while the thought which was uppermost in his mind when he did talk rationally was a provision for life for his two children, while the will really left Mrs. Ridenbaugh in but little better condition than if he had absolutely bequeathed the $60,000 to Colhoun and Williams, we are not prepared to say that there was no evidence tending to prove that the execution of the will was procured by the exercise of undue influence on the mind of George Young.

The highest rate of interest on money authorized by law is ten per cent. This would yield $6,000 per annum on the amounts in the hands of the trustees, from which were to be deducted $1,000 for the education of the children, $2,910 taxes on the principal, $1,000 to be paid to the trustees for managing the fund, and if to these amounts be added $800 taxes paid on the property devised to Mrs. Ridenbaugh for the year 1874, the year her father died, there would be a balance of $250 for the support of Mrs. Ridenbaugh and her family, and for repairs on the property.

The court excluded evidence to show that in the year 1874 Mrs. Ridenbaugh paid that amount of taxes on the

2. WILLS: evidence property devised to her.   In this we think the court erred.   In passing upon the capacity of a person to make a will, the will itself and all its provisions may be considered by the jury, and while the fact that it is apparently unjust to his children, is not of itself sufficient to invalidate it, yet it is a circumstance to be considered in connection with other facts in determining the question as to the capacity, and it is proper to put the jury in possession of all the facts in relation to the condition of all the property devised or bequeathed, in order that they may determine whether the injustice of the disposition made by him of his property is apparent or real.   Suppose there had been a mortgage for a large amount upon the St. Joseph property devised to Mrs. Ridenbaugh, would it not have been competent under the circumstances for the plaintiff to show that fact?   Upon what principle was evidence admitted to show that the taxes in St. Joseph amounted to $4.85 on the $100, and that it was worth $1,000 to manage the funds intrusted to Colhoun and Williams?   Upon the very same principle, and no other, which sanctions the admission of the evidence that at the date of the death of George Young the property devised to his daughter was incumbered for taxes to the amount of $800.   The jury should, if possible, know all about the property of the testator, its location, value, and how, if at all, incumbered.

The court did not err in refusing the third instruction asked by plaintiff.   It was, in substance, that the fact that 3. TESTAMENTARY a will was dictated by another person than CAPACITY. the testator invalidates it, if the testator did not fully comprehend its provisions, and the effects of such provisions upon the interests and estates devised to the objects of his bounty.   It unintelligibly blends the two issues of capacity to make a will and undue influence.   The instruction would have been as good if all of it in relation to the dictation of the will had been omitted.   The fact that a will was dictated by another person to the testator does not invalidate it.   If he be in a condition to make a will,

and adopt suggestions, it is his will, and stands precisely as if he had written it himself; and the latter part of the instruction requiring the jury, in order to declare it to be his will, to find that he fully comprehended and understood the provisions, goes too far when it requires the jury to find that he fully comprehended the effect of the provisions upon the interests and estates given to each devisee. There are many wills in regard to the construction of which the most learned lawyers differ, but they are not, therefore, invalid; and while lawyers and courts are perplexed to construe them, it would certainly be going too far to say that they are invalid unless the testator fully understood the effect which the provisions of the will would have upon the interests and estates given to the devisees. He must understand the business in hand, and know what disposition he wishes to make of his property. He must have sufficient understanding to determine whether the will makes that disposition of his property, but is not required to know exactly how, by law, all questions which might arise under it would be determined.

But if for nothing else, we should reverse this judgment for the glaring error in the sixth instruction. It declares " that the unsoundness of mind sufficient to invalidate a will must be such as to render the testator, for the time being, incapable of understanding that he was engaged in making a disposition of his property." One might know that he was making a disposition of his property and be utterly incapable of comprehending its extent or his relation to his kindred, or of making a disposition of his property with understanding and reason. The instruction is to the effect that, to invalidate the will, the jury should find that the testator had the lowest degree of intellect, or, rather, none at all. A child five years of age knows when it parts with its toys that it is disposing of its property, and, by the test given in the sixth instruction, would be capable of making a will disposing of an estate worth $100,000, because it might know that it

was disposing of its property. A sound and disposing memory is one which not only knows when it is disposing of property, but how to dispose of it with understanding and reason; but the instruction declares that, in order to find for plaintiff, the jury must find not only that he was incapable of comprehending the nature and extent of his property and the persons who were intended to be provided for by the will, but that he was also incapable of understanding that he was engaged in disposing of his property. This is the plain import of the instruction, and it was erroneous. Redfield on Wills, 1st Vol. (3 Ed.) 124, 128, 129, 130.

In *McClintock v. Curd*, 32 Mo. 422, an instruction identical with the one under consideration was given, in connection with others, and the court said that, "taken as a whole, they presented the law of the case fairly to the jury. The jury were in effect called upon to say whether, at the time of the execution of the will, said Freeland had a sufficient mind and understanding to dispose of his estate with judgment and discretion." The court evidently did not regard that instruction as properly declaring the law. There are cases in which a judgment should not be reversed, although the trial court may have given an erroneous instruction, if by others it properly and clearly declared the law of the case. They are cases, however, in which it is apparent from the simplicity of the issues, and the overwhelming weight of evidence to sustain the finding of the jury, on the correct theory of the case, that the erroneous instruction could not have prejudiced the complaining party; but where no such preponderance of evidence appears in a case in which the validity of a will is contested on the ground of incapacity and undue influence, in which some of the finest distinctions are to be drawn that are presented in jury trials, it cannot with any certainty be said that an erroneous instruction has not prejudiced the losing party against whom it is given. Many jurymen are apt to seize upon those instructions which are

most easily understood, and adopt them as the guides of their deliberations, and this sixth instruction is the least difficult of comprehension of any given by the court for defendants on the subject of testamentary capacity.

This court will not reverse a judgment in a proceeding under the statute to set aside a will, because the jury *5 NATURE OF PROCEEDING TO SET ASIDE A WILL: weight of evidence: practice in supreme court.* found the issues against the weight of evidence. In *Lyne v. Marcus, Guardian,* 1 Mo. 410, it was held that a proceeding under the statute to set aside a will is a proceeding at law. So in *Trotters v. Winchester,* Id. 414, and *Swain v. Gilbert,* 3 Mo. 347. But for the errors already noticed, the judgment is reversed and the cause remanded. All concur except Judge HOUGH, who was not present at the argument.

REVERSED.