# DEAN v. KANSAS CITY, ST. LOUIS & CHICAGO RAILROAD COMPANY, Appellant.

### Division One, November 21, 1906.

1. **RAILROAD: Negligence of Lessee: Liability of Lessor: Statute: Constitutional.** Where a railroad company leases its road and properties to another company for 1000 years, and that company subleases to another for 99 years, the lessor company is liable for injuries, due to the negligence of the sub-lessee in operating its train, inflicted upon one of its trackmen. That is the statute, and that statute is constitutional.

2. **NEGLIGENCE: Projectile From Train: Contributory Negligence.** Where the evidence shows that the injured section hand, who was struck by a piece of coal hurled from the tender of a passing train, went further from the track than section men usually go to let trains go by, the issue of contributory negligence should be submitted to the jury, and if submitted upon proper instructions, a verdict for plaintiff is the end of that issue.

3. ————: **Instruction: "Pain that He may hereafter Suffer,"** etc. An instruction which allows plaintiff to recover for bodily pain and mental anguish suffered and endured "and which plaintiff may hereafter suffer and endure," when immediately followed by the words, "if any, as shown by the evidence, on account of said injuries," is not reversible error. The use of the auxiliary "may," standing alone, gives room for unreasonable conjecture, and admits of a double meaning, but restricted as it is here by the context, to hold that it can be made to mean "might possibly," and to reverse the judgment on that ground, would be to adopt a strained construction and adhere to a refinement altogether too critical for a workable standard. Nevertheless, the use is not commended.

4. ————: ————: **Future Earnings: No Proof.** Although there may be no evidence directed to the future earnings by name, yet if by reasonable inference the evidence points to a continuation of the plaintiff's inability to labor, it is no error, on the ground that there was no evidence to support it, to give an instruction directing the jury, in assessing his damages, to take into consideration his loss of future earnings.

5. ————: ————: **Ambiguous.** An instruction given for a prevailing plaintiff, ambiguous and ungrammatical, is not reversible error, if it announces a proposition, in so far as it an-

Dean v. Railroad.

nounces any, that is more favorable to defendant than the strict law, and when read in connection with defendant's instructions given puts the issue to the jury fairly enough.

6. ———: ———: Misconstrued: Defective Construction: No Proof. Plaintiff was injured by a piece of coal hurled from the tender of a passing train, and throughout the trial the issue was whether the coal was negligently piled up over the rim of the tender, and there was no proof that the tender was defectively constructed; nevertheless, the instruction given for plaintiff told the jury that if they find and believe from the evidence that "such places, positions, receptacles were unsafe, insecure, defective and dangerous," etc., they should find for plaintiff. *Held*, that the instruction ought not to be considered as putting to the jury the defective construction or condition of the tender itself, but relates to the coal lying above the rim of the tender.

7. EVIDENCE: Insufficient Objection: Immaterial and Remote. An objection at the trial that the inquiry was about "immaterial" matters cannot on appeal be enlarged into an objection that the testimony was too remote.

8. ———: Immaterial. Where the offered evidence is worth anything for any purpose, an objection that it is immaterial should be overruled.

9. ———: Remote: Condition of Railroad Track. Where plaintiff's injuries were caused by a piece of coal hurled from a passing train, and he charges that it was so hurled because the tender was overloaded and the track defective, testimony showing the condition of the track six months before the injury is not too remote, especially if the condition is shown to exist down to the time of the injury. He should show its condition for a sufficient length of time to give reasonable notice, and, besides, bad steel rails do not get better by further use for six months. .

10. VERDICT: Excessive: $5,000: Permanent Injuries. A piece of coal was hurled from a train going from 45 to 60 miles an hour; it struck the ground, broke into pieces, and a piece as large as a hen's egg, or larger, struck the plaintiff's knee, knocking his left leg (on which his weight rested) back eight inches and knocked him down and rendered him helpless. He received prompt medical attention, but has not since been able to work or to walk without artificial aid. Inflammation, swelling, pain and sleeplessness have since attended him. He has spent much money in trying to get relief and medical testimony was that tuberculosis of the knee had set in. He was a section hand, 32 years old, and had previously earned $1.10 per day. *Held*, that a verdict of $5,000 was little enough.

Dean v. Railroad.

11. **NEGLIGENCE:** Projectiles from Passing Train: **Assumption of Risk.** It cannot be said, as a matter of law, that the danger of being struck and injured by flying coal piled eight inches to a foot high above the rim of the tender of a passing engine going at a rapid rate over bad rails, laid unevenly on indifferent ties, is an ordinary risk to a section hand standing fifteen feet from the track.

12. ———: ———: ———: **High Speed in Country.** It cannot be held, as a matter of law, that a passenger train (because in a country district) can run at a rate of practically a mile a minute over a track in bad condition, with the tender piled so high with coal that it will not stay in position, without the company incurring liability for injury to its trackmen from flying coal. It will not be held, as a matter of law, that such a train so run is not negligence when a section hand standing fifteen feet from the track is injured by coal hurled from the tender.

13. ———: ———: ———: **Accident: Anticipated.** Nor will it be held, as a matter of law, under such circumstances, that the section hand's injuries arose from a cause which no man of ordinary prudence could reasonably anticipate and hence that they come within the domain of inevitable accident.

14. ———: **Definition.** Negligence is the absence of due care, and due care is a care adjusting itself to the circumstances of the case. Its substance is the failure to act with due foresight.

15. ———: **Coal in Tender: Projectile.** Ordinary care requires that it be anticipated that the coal piled up eight inches or more above the rim of the tender of a railroad train, running from 45 to 60 miles an hour in the country, over uneven rails, will be hurled forth, and that the consequent danger from such projectiles to trackmen rightfully along the track be reasonably guarded against.

16. ———: ———: ———: **Assumption of Risk.** The servant does not assume the risk arising from the supervening and active negligence of his master. A railway trackman does not assume the risk of being struck by a piece of coal hurled from a tender upon which the coal is piled eight inches or more above its rim, when the train is run at a very rapid speed over an uneven track.

17. ———: ———: ———: **Unusual Accident.** The fact that the injury is unusual does not defeat plaintiff's recovery. A defendant charged with negligence may be held liable for any injury inflicted upon another which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.

Appeal from Lafayette Circuit Court.—*Hon Samuel Davis,* Judge.

AFFIRMED.

*Richard Field* and *Scarritt, Scarritt & Jones* for appellant.

*John Welborn* and *Charles Lyons* for respondent.

LAMM, J.—The defendant is a domestic corporation and owns the right of way, roadbed and track of a railroad running from Mexico, Missouri, through Lafayette county to Kansas City. The Chicago & Alton *Railroad* Company is an Illinois corporation, and in 1872 took over defendant's said property under a lease, said to be for 1,000 years. Later another foreign corporation, the Chicago & Alton *Railway* Company, became sub-lessee under a term of 99 years, and on the 19th day of February, 1902, was running and operating its trains on said railroad through its own servants. Plaintiff was a section hand on said line in the employ of said sub-lessee. On said date about one mile and a half west of Bates City, a station on said line, one of its passenger trains, running at great speed, approached the place plaintiff was at work. Plaintiff stepped fifteen feet to one side to allow said train to go by and while awaiting its passage was struck on the left knee by a piece of coal hurled from the tender of the locomotive and seriously injured. He sued the Kansas City, St. Louis and Chicago Railroad Company for damages sounding in tort, recovered $5,000, and the company appeals.

I. The liability of defendant, lessor, for the negligence of its sub-lessee, the Chicago & Alton Railway Company, is based upon section 1060, Revised Statutes 1899, providing, among other things, that "a corporation in this State leasing its road to a corporation of

another State, or licensing or permitting a corporation of another State, under any running arrangements, to run engines and cars upon its road in this State, shall remain liable as if it operated the road itself,'' etc.

Due steps were taken by answer and instructions (offered but refused) to present and preserve a constitutional question, to-wit, that said statute ''is unconstitutional and void, and assumes to give plaintiff a cause of action against defendant without due process of law . . . . and in that it attempts to impose on defendant the obligation of another, without defendant's consent, and thereby violates sections 4, 10, 15, and 30 of article 2, and section 53 of article 4 of the Constitution of Missouri, and the Fourteenth Amendment of the Constitution of the United States.''

The statute thus assailed has long been in force. [Laws 1870, p. 90]. It proceeds on the theory that the franchises and powers of a railroad company are in a large measure designed to be exercised for the public good and this exercise of them is the consideration for granting them and that a contract by which such railroad company renders itself incapable of performing its duty to the public, or attempts to absolve itself from its obligation, *without the consent of the State,* violates its charter and is forbidden by public policy, and hence is void. [Thomas v. Railroad, 101 U. S. 71.] The right to lease, arising only by consent of the Legislature, is subject to legislative terms imposed. [Smith v. Railroad, 61 Mo. 1; State *ex rel.* v. Railroad, 89 Mo. 534-5; Markey v. Railroad, 185 Mo. 348.] The statute in question, prescribing the terms upon which a railroad lease may exist, having been held valid in Markey v. Railroad, *supra,* a case in which the opinion was handed down in December, 1904, after the trial, *nisi,* in the case at bar, appellant, as we understand the submission here, has abandoned its constitutional point and does not seek to disturb or reagitate our settled

construction of that statute, but if not abandoned, it must be overruled.

II. The answer pleaded the contributory negligence of plaintiff. The only theory upon which plaintiff's negligence could be urged is that he remained too close to the passing train. The evidence shows he went farther away than section men usually go to let trains go by. The issue of contributory negligence was submitted to the jury and the jury found plaintiff was exercising due care. We do not gather from the briefs of appellant's learned counsel that they now assert any error in that submission or that the verdict is subject to legal criticism on that score. Hence we put that matter away from us.

III. Plaintiff's instructions are made a target for shafts of criticism, and prejudicial error is assigned in the giving of them; therefore it may be as well to set forth the instructions on both sides and let them speak for themselves.

For plaintiff, the following instructions were allowed:

1. "The court instructs the jury that if you believe from the evidence that on or about the 19th day of February, 1902, the plaintiff was in the employ and service of the Chicago & Alton Railway Company, as a common laborer, and was on that date engaged in repairing the track of the defendant's road at a point on said road, about one and one-half miles west of Bates City, Lafayette county, Missouri, and that the Chicago & Alton Railway Company, its agents and servants running and operating its cars and trains along and over said road at said point, knew or by the exercise of ordinary care could have known, that the plaintiff was so engaged, and the plaintiff while in the exercise of ordinary care on his part, was injured by a lump of coal, thrown and hurled from a passing train managed, operated and controlled by the Chicago & Alton Railway Company, its agents and servants, and that the Chi-

cago & Alton Railway Company, its agents and servants, negligently and carelessly had piled, placed, heaped and permitted lumps and quantities of coal to be and remain in unsafe, insecure, defective and dangerous places, positions and receptacles in and about its said engine and train of cars, if you find and believe from the evidence that such places, positions, receptacles were unsafe, insecure, defective and dangerous, and negligently and carelessly ran and operated its said engine and train of cars at a high and excessive rate of speed, if you find and believe from the evidence that the rate of speed, under the circumstances, was high and excessive, along, upon and over a rough, uneven track, if you believe from the evidence that said track at said point was rough, uneven, and shall further believe from the evidence that such acts and conduct were, under the circumstances, careless and negligent, and shall further find and believe from the evidence that the Chicago & Alton Railway Company, its agents and servants in charge of said train, knew or by the exercise of ordinary care, could have known that the plaintiff, by reason and in consequence of such acts and conduct, was likely to suffer harm and injury, and that by reason and in consequence of such acts and conduct the lump of coal aforesaid was thrown and hurled from the passing engine and train aforesaid, and that plaintiff by reason and in consequence thereof, was injured as aforesaid, and shall further find from the evidence that his injury, under the facts and circumstances, was not a risk which he assumed when he entered the service and employment of the said Chicago & Alton Railway Company, then your verdict should be for the plaintiff in this case.''

2. ''The court instructs the jury that while a servant in accepting employment assumes all the ordinary risks and hazards incident to it, and which are a part of the natural and ordinary method of conducting the business, and all the risks and hazards of which he

knew, or by the exercise of ordinary care, could have known, he does not assume those, if there are any such, arising from the negligence of the master of which he knew nothing, or of which he could have known by the exercise of ordinary care on his part."

3. "If the jury finds for the plaintiff, they will assess his damages, if any, at such sums as they believe from the evidence will reasonably compensate him for his injuries sustained, if any, as shown by the evidence, and, in estimating such damages, if any, the jury will take into consideration the physical injury, if any, whether temporary or permanent, as shown by the evidence, the bodily pain or mental anguish, if any, suffered and endured, and which plaintiff may hereafter suffer and endure, if any, as shown by the evidence, on account of his said injuries, any sum or sums of money, if any, as shown by the evidence, the plaintiff has paid, or become liable to pay for medicine and medical attention, on account of his said injuries, any sum or sums of money, if any, as shown by the evidence, the plaintiff has lost in earnings on account of his said injuries, and the losses, if any, as shown by the evidence, in future earnings, as you may reasonably believe will result to plaintiff on account of his said injuries, not to exceed in all the sum of twenty-five thousand dollars."

For defendant, the following instructions were allowed:

1. "If the jury believe from the evidence that the injuries sustained by the plaintiff were merely the result of accident, then your verdict must be for the defendant."

2. "The court instructs the jury that this case should be considered by them the same as if it were a controversy between two persons of equal standing in the community. The fact that one of the parties is a corporation should not influence your mind in any way, but the right of the parties should and must be determined upon the evidence introduced in the case

and the instructions given to the jury, which is the law and only law to guide you in your deliberations. Those instructions, although read to you by the lawyers, are the court's instructions, and must be taken and considered by the jury, the same as if they had been read by the judge from the bench.''

3. ''The court instructs the jury that the defendant is not required to prove nor explain what caused the lump of coal to fall from said train; that the plaintiff has alleged that it was due to the negligence of defendant, and plaintiff must prove such negligence; it cannot be presumed from the mere fact that plaintiff was hurt. When the plaintiff accepted this employment, he did so in contemplation of the ordinary hazards and dangers of the business and upon condition, not that the employing company would insure him against accidental injuries, but only that it would exercise reasonable and ordinary care and diligence. And if the jury believe from the evidence that said company did exercise such care, and that notwithstanding it did so, the plaintiff was injured, then he cannot recover in this action.''

4. ''The court instructs the jury that the burden of proving the facts necessary under the instructions of the court, to make the defendant liable, rests upon the plaintiff; and if the jury believe after considering all the credible evidence introduced in the case, that the plaintiff has not established such facts by the greater weight of evidence, then the jury should find for the defendant.''

5. ''Although the jury may believe that the defendant was guilty of negligence, yet if they also find from the evidence that the plaintiff was himself guilty of negligence, which directly contributed to produce his injuries he cannot recover, and you will find for the defendant.''

8. ''The court instructs the jury that by the term 'negligence' as used in these instructions, is meant the

failure to take such precaution and observe such care as a person of ordinary prudence would have exercised under the same or similar circumstances, and these words imply the use of such watchfulness and caution as were fairly proportioned to the danger to be avoided.

"And by words 'ordinary care,' as used in these instructions, is meant such care as a person of ordinary prudence would usually exercise in the same situation and circumstances."

9. "If the jury believe from the evidence that the plaintiff entered the employment of the C. & A. Ry. Co. as a section hand to do such work as was required of him as such employee, then the law presumes that in accepting such work he assumed the ordinary risks and dangers of such employment and he is compensated for taking such risks by the wages agreed upon; and if he is injured while doing such work, in consequence of such ordinary risks and dangers, he cannot recover, and you will find for the defendant."

1. It is contended that prejudicial error lurks in plaintiff's instruction numbered 3 relating to the measure of damages.

(a) For instance, it is seen that plaintiff was allowed to recover for pain and anguish suffered and endured "and which plaintiff *may hereafter suffer and endure.*" It is pointed out that recovery should be limited to such pain and anguish as would be reasonably certain to occur—as would reasonably or probably result from the injuries proved. That this is the true rule has often been said by this court. [Chilton v. St. Joseph, 143 Mo. 1. c. 199; Russell v. Columbia, 74 Mo. 1. c. 488; Reynolds v. Railroad, 189 Mo. 1. c. 421.] Yet it is impossible to maintain an even flight of nice precision of speech, even from the bench, however desirable that might be. The best appellate courts can do, in the way of working theory, is to maintain a practical standard, and, where an expression in an instruction is plainly

misleading and would reasonably result in mischief, to say so. The auxiliary verb "may," as pointed out by VALLIANT, J., in the Reynolds case, supra, "comprehends the idea of probability and also the thought of what is with more or less certainty to be expected." It also comprehends (in one of its usable senses) the idea of possibility and, so used, becomes equivalent to the expression "might possibly;" so that, if an instruction were so worded without restrictive safeguards that it, read with the context and in the light of the circumstances of the case, would naturally be construed by an average man to mean that the jury were directed to render a verdict in favor of plaintiff for pain and anguish which *might possibly* occur in the future, it would be palpably vicious. The use of the auxiliary verb *may* in the connection under consideration, has been criticised by the Courts of Appeal. [Albin v. Railroad, 103 Mo. App. 308; Schwend v. Railroad, 105 Mo. App. 534; Walker v. Railroad, 106 Mo. App. 321; McKinstry v. Railroad, 108 Mo. App. 12; Ballard v. Kansas City, 110 Mo. App. 391; Haas v. Railroad, 111 Mo. App. 706.] And by the courts of other States, *e. g.,* Ford v. Des Moines, 106 Iowa 94; Hardy v. Railroad, 89 Wis. 183. On the other hand, this court has time and again approved an instruction on the measure of damages employing the auxiliary verb may in precisely the same way it is employed in the criticised instruction. [Reynolds v. Railroad, *supra,* and cases cited; Fisher v. Railroad, 198 Mo. 562; Rodney v. Railroad, 127 Mo. l. c. 685, decided in Banc; Smiley v. Railroad, 160 Mo. l. c. 634-5; Bradley v. Railroad, 138 Mo. l. c. 301.]

It will be seen that, by the instruction under review, the future pain and suffering from which damages flow are restricted to those pains and sufferings "if any, as shown by the evidence, on account of his said injuries." This points the jury to the injuries and to the evidence. Men, under oath in a box, taking a sober and vital part in the administration of justice, self-evi-

dently are presumed by the law to be reasoning men—
to be apt in solving the problems of life by the aid of
reason, *i. e.,* everyday sense.  There ought to be no pre-
sumption indulged that, unless fenced in by the court
at every single step, they will be prone to wander from
the beaten path of reasonable certainty and probabil-
ity (a path where effects are referred to their causes)
and amuse themselves with wild goose chases in by-
fields of airy guess and unreasoning conjecture—the
might possibly be—the material out of which old wives,
with pipe in mouth, once constructed their fables in
nook and by ingle.  Therefore, while it may be conceded
that the instruction is unfortunately worded, yet we
adhere to our ruling in the Reynolds case, *supra,* to the
effect that it was not reversible error to give it under
the circumstances in judgment and with the restrictive
limitations of the context; because, if we were once to
adopt the rule of blinking the context and reversing
cases where a word or a phrase, *standing alone,* admits
of a double meaning, one of which might be mischiev-
ous, it is not apparent that the administration of jus-
tice would advance by that step, for under such con-
struction cases affirmed on appeal might become as few
and as far between as angels' visits.

(b)  A further insistence of defendant is that the
court erred in directing the jury to take into considera-
tion the loss of such future earnings as they might reas-
onably believe will result to plaintiff on account of his
said injuries.  The point made is that there was no evi-
dence upon which to base that phase of the instruction.
The law only requires the character of proof of which
the particular issue in the case, in the inherent nature
of things, is susceptible.  Plaintiff at the time of his in-
jury was shown to be a working man, in good health,
selling his labor in the daily market for what it would
command.  He was thirty-two years of age, earning
$1.10 a day.  The evidence shows that by reason of his
hurts he had been unable to labor at any time there-

after up to the time of the trial. His earning capacity at the trial, then, was *nil*. There was also evidence tending to show a condition of his knee, not only serious, but permanent in character. While there was no evidence directed to future earnings by name, yet by reasonable inference it did point to a continuation of the status then existing.

The case in this aspect falls somewhat within the "well-recognized general rule that where the existence at one time of a certain condition or state of things of a continuing nature is shown, the general presumption arises that such condition or state continues to exist, until the contrary is shown by either circumstantial or direct evidence, so long as is usual with conditions or things of the particular nature." [22 Am. and Eng. Ency. of Law (2 Ed.), 1238; Mullen v. Pryor, 12 Mo. 307.]

Nor does it occur to us that the case was susceptible of proof of any more satisfactory character than that introduced; hence, there was a sufficient basis upon which the good judgment and experience of the jury could act in making a finding.

It follows that the whole assignment of error directed to instruction number 3 should be disallowed.

2. It is next contended that instruction numbered 2, relating to the assumption of risk, is erroneous, and this for two reasons: First, because ambiguous; and, second, "because it is predicated on facts not only of which there is no proof in the record, but the opposite of those established by the evidence."

As defendant elsewhere in its brief makes the further insistence that its demurrer to the evidence should have been sustained on the theory that, as a matter of law, the danger arising from the falling of a chunk of coal from a going tender should be deemed an ordinary risk assumed by plaintiff, the criticism last above to the effect that there was no evidence upon which the instruction could stand, that it was a mere

abstract generality and therefore misleading, may well be deemed merged in the larger one and considered when we come to pass upon the demurrer.

The contention that the instruction is ambiguous has some merit; for (at first blush), it is. It seems to have been allowed to pass in the hurry of the trial under the trained eyes of court and counsel with some imperfections of grammatical form and lapses of sense. Nevertheless, we do not see how it could have misled the jury to defendant's detriment; for, in so far as it announces any propositions at all, it announced propositions more favorable to defendant than the strict law, rigidly applied, would allow; and read in connection with defendant's own instructions, number 3 and number 9, it put the issue of assumption of risk to the jury quite blandly for defendant.

3. In the next place error is assigned of plaintiff's principal instruction, numbered 1. On this behalf it is argued, first, that the instruction erroneously put to the jury the issue of the defective construction or condition of the tender or engine itself when there is no evidence of such fact; second, that the instruction erroneously put to the jury the question whether defendant's lessee carelessly ran and operated its train at excessive speed; third, that the instruction erroneously submitted to the jury, as an issuable fact, whether defendant's lessee knew or by the exercise of ordinary care could have known that the plaintiff by reason and in consequence of the alleged negligent acts was likely to suffer harm and injury.

In our opinion the last two insistences are mere amplifications of defendant's principal contention, to-wit, that there was no case to go to the jury and that its demurrer should have been given, presently to be considered. As to the first criticism, a sufficient answer to it is that, fairly read with the allegations of the petition and the facts uncovered at the trial, it ought not to be considered as putting to the jury the defective

construction or condition of the tender or engine itself, of which there was not a particle of proof. It is true it tells the jury that if they find and believe from the evidence "that such places, positions, receptacles were unsafe, insecure, defective and dangerous," etc., they should find for the plaintiff, but does all this verbiage not relate to the coal lying above the rim of the tender, and not to the tender itself—to the position in which the coal was on top of the tender, rather than to the construction or capacity of the tender itself? In other words, the gravamen of the matter was over-loading the tender with coal and allowing coal to be negligently heaped up on the tender so that the negligent speed of the train, when taken in connection with the negligent condition of the track, produced a dangerous concatenation of things resulting in plaintiff's injury. Having used a profusion of richness of language in his petition (necessarily raising somewhat of a fog of obscurity) it is possible that plaintiff may have sought to relieve the situation by repeating the same richness of profusion (and consequent obscurity) in his instruction. But two darks do not make one light in the law any more than two wrongs make one right. Two doses of the same inaccuracy do not cure an ill in jurisprudence. In fact, it is believed to be only in medicine that like cures like (*similia similibus curantur*), and even on that doctors disagree.

Suffice it to say, however, that, getting at the reasonable intendment of the instruction, it will be found that running through petition, instruction and evidence was the central idea of a tender negligently overloaded with coal, which, with other negligences pleaded and proved, combined themselves into a proximate cause of the injury. That is what the language struck at means, as we grasp it, when reduced to its final constitutive elements and read with the context; and hence we are not of the opinion that the foreign issue of a defectively constructed tender or of a tender or engine in a negligent

or defective condition was submitted to the jury as a basis of a finding for plaintiff.

IV.  During the examination in chief of one Mar-tin Anthony, a former section foreman of defendant's lessee who left its employ on the 25th of August, 1901, plaintiff's counsel propounded to him the following inquiry: "Q.  Tell the court what condition that" (the track where plaintiff was hurt) "was in, in August before Mr. Dean was hurt." To this question defendant's counsel objected on the ground that "the same is immaterial," and the objection was overruled and defendant saved an exception.  Following that inquiry, the witness's testimony was damaging to defendant.

In this court defendant insists it was error not to exclude the evidence—that the issue was the condition of the track at the time of the injury in February, 1902, not in August, 1901.  The gist of the objection is that the evidence is too remote, it calling for the condition of the track six months before plaintiff was hurt.

We do not think there is merit in this assignment of error.  And this because, it will be observed at the outset, the objection lodged below was not that the evidence sought was too remote, but that it was immaterial.  We have lately had occasion to consider at some length the old question of the unwisdom and unfairness of lodging below an indefinite objection and later (on review) changing the objection to one certain and specific (Bragg v. Railroad, 192 Mo. l. c. 342, *et seq.*), and what is said there disposes of the point here.

Not only so, but where the offered evidence is worth anything for any purpose an objection that it is immaterial should be overruled.  Now, in this case, the condition of the track was a material issue under the allegations of the petition. Plaintiff chose to commence with its condition six months before the injury, and should have shown its condition a sufficient length of time before the injury to give reasonable notice. [Mur-

phy v. Railroad, 115 Mo. l. c. 123.] Whether six months was too remote a time would depend on circumstances. Certainly we may be presumed to know that bad steel rails do not get any better by further use for six months, or improve (like wine) with age. But in this case no aid need be borrowed from the presumption that the status of things disclosed here, once shown to exist, is presumed to continue. Because, as we read the record, plaintiff introduced evidence which by plain inference showed that the same (if not a worse) condition of things continued to exist down to the time of the injury. Hence no injury resulted to defendant from the ruling below.

This assignment of error, then, must also be disallowed.

V. On a point duly saved below in the motion for a new trial, an alleged excessive verdict is pressed upon us as reversible error, but this assignment of error must be overruled for reasons. The train was going at from forty-five to sixty miles an hour. A piece of coal, characterized by some of the evidence as "a large lump," left the tender as if shot from a catapult, striking the ground close to plaintiff, bursting by the impact, and a piece of it, shown by some of the testimony to be "as large as your fist," and by other testimony to be the "size of a hen's egg," flew up and struck plaintiff on the knee, knocking his left leg (on which his weight rested at the time) back some eight inches and knocking him down and rendering him helpless. He was carried to Bates City, received prompt medical attention and from that day to the day of the trial he had been unable to do any labor or to walk without artificial aid. Inflammation, swelling, pain, sleeplessness and their attendant ills have closely waited on this man ever since, "sitting by his hearth, sipping from his cup"—a part of all his downsittings and his uprisings. There was no attempt by defendant to show his injuries were not serious—were not, as knee

injuries usually are, painful and insidious. The unquestioned medical testimony is to the effect that from that injury, tuberculosis of the knee had set in, and we can not agree with defendant's counsel in their interpretation of the record to the effect that the testimony does not show or tend to show the injury permanent. The verdict was $5,000. Plaintiff had spent and caused to be spent several hundred dollars for doctors' bills. He has been continuously under the care of experienced physicians at Kansas City and at home of good standing, and $5,000 was little enough, if he was entitled to go to the jury at all.

VI.  Was the case entitled to go to the jury? That is the question, and the controlling one, in the case. Defendant's learned counsel contend it was error to refuse an instruction in the nature of a demurrer to the evidence, and argue, in substance, as follows:

(a)  That the danger arising from the falling of a chunk of coal from the tender of a going locomotive, as a matter of law, must be deemed an ordinary risk incident to the business and assumed by trackmen.

(b)  That the law puts no limit upon the rate of speed of a railroad train in country districts and hence, they say in effect, there can be no such a thing as a negligent rate of speed in the country.

(c)  On the whole case made there was no negligence shown.

(d)  That plaintiff's injury was the result of an accident, pure and simple, and came within the principle "that if an injury occurs from a cause which no man of ordinary prudence could reasonably anticipate, unless in exceptional circumstances, would have happened; that such instances are assigned to the domain of inevitable accident, concerning which, no one being negligent, no one is responsible." [Graney v. Railroad, 157 Mo. l. c. 679.]

It will not be necessary in the consideration of these questions to set forth the evidence in detail.  It

is sufficient to state that plaintiff had worked for two years as a section hand for defendant's lessee and that he lived at Bates City. By Martin Anthony plaintiff showed that "the track 60 feet from where he was hurt east, was laid with heavy steel an inch higher than where Mr. Dean was hurt, the steel where Mr. Dean was hurt was condemned by the company and the reason we had not laid the new steel was because we were making a cut-off there; the track was very rough and Mr. Brown, the special inspector, gave me orders to put in as little time as possible to keep the trains from being regular; I found it a very hard matter to keep it this way, on account of the bad steel and band steel." The foregoing evidence related to the condition of the track between five and six months before the injury. His testimony was further to the effect that a grade for a new track was then being made to straighten a curve at or near the point in question and it was contemplated to presently abandon the old roadbed and track. The new roadbed was south of and adjacent to the old and it may be said that at the time of the trial the change had been made and the old roadbed and track abandoned. The witness Anthony further testified that as section foreman he could not make a good track out of the old track because the steel was bad. By the evidence of other witnesses, plaintiff established the fact, as hereinbefore stated in this opinion, that substantially the same condition of things existed on down to the date of the injury. It was shown that at that time the rails were somewhat spread, that the gauge was not proper; that the track was not level, but was uneven; that the bolts needed tightening, and that some of the ties were in bad condition.

Although there was evidence from one or more witnesses that the track was not dangerous for the passage of trains and other evidence that passenger trains passed over it at the time with great bursts of speed at from 45 to 60 miles an hour, yet there was

no effort made by defendant to show that the condition of the track itself—the rails, ''band steel'' and ties— was otherwise than as heretofore stated—in fact there was but little conflict in the evidence.

It was further shown that the train in question was passenger train going west about the middle of the afternoon and was on time, that its speed was between 45 and 60 miles an hour, and, on cross-examination of plaintiff on the stand, it was shown that at least one other man had been injured by flying coal and that a train had been derailed at that point, and that this particular train usually ran fast.

The land south of the old track was somewhat higher than the land immediately north. At the time in question plaintiff was working on the south rail and the other section men and foreman on the north rail. As the train approached, these other men went to the north to let the train go by, and plaintiff to the south. There is evidence from which the inference could be drawn that plaintiff was rather solicitous about dangers from these swift trains on that track. He first got sight of this train about a quarter of a mile away. As it approached, he saw that the coal projected up over the rim of the tender and he stepped to one side to a greater distance than usual out of abundance of caution. There is no dispute but what he was fifteen feet away when struck. On the part of plaintiff there was evidence that a large lump of coal shot from the rear of the tender towards him. As we understand the record it struck the ground close to where he was standing and the force of the impact burst the lump of coal into pieces. Plaintiff testified that a piece as large as a man's fist flew up and struck him on the knee. Other evidence indicated that the piece was about the size of a hen's egg. Whatever the size, it knocked plaintiff's left leg, upon which his weight then was, some eight inches back, as said heretofore, leaving a mark to that effect on the ground, and knocked plaintiff to the ground.

There was some evidence to the effect that coal sometimes rolled out of the gangway between the tender and the engine proper when firemen were feeding their fires, or at other times, but the direct evidence in this case is that this piece of coal came from the top of the tender towards the rear. The evidence was further to the effect that the tender was an unusually large one and some of it indicated that its coal was rounded up in the center for eight inches or a foot, but other evidence tended to show that it projected up "all over" the rim of the tender, that is, that it not only was higher than the rim of the tender in the center, but also at the edges. It was in evidence that tenders of engines run on that road were sometimes loaded with coal above the rim and it was sought by defendant to swell such instances into a system or custom, but we do not think the evidence sufficient to establish a uniform custom or system to so load tenders with coal, or that plaintiff knew of any such custom or system, though there was evidence that he, while a section man, became aware of instances of such overloading.

The tender in question was loaded at Odessa, eight and one-third miles east of the *locus in quo*. It took coal through a chute under the supervision of the fireman and was loaded for a run of 40 miles to Kansas City. It was not shown it was necessary to load this tender in this way in order to hold coal sufficient to pull the train to Kansas City. Defendant placed its engineer and fireman on the stand and but little light was thrown by their testimony on the way this tender was loaded, or as to what care was taken by the fireman to trim the coal or arrange it so that it would not fly off when going at great speed over a rough track. In fact, these witnesses, while they testified to the habit of taking care, had no definite recollection as to how this particular engine at this particular time was loaded. It was shown that plaintiff had now and then seen pieces of coal (presumably from tenders) along the track dur-

ing the time of his employment; and it was further shown that when coal was piled above the rim of a tender it was prone to be thrown off by the rapid motion of a train over a rough track, and other evidence tended to show that the cause of plaintiff's being shot on the knee by this particular piece of coal was that the coal was piled too high to stand the momentum of the train's motion on a bad track.

On this record we are asked to hold, as a matter of law, that the danger to plaintiff of being wounded by flying coal piled from eight inches to a foot above the rim of the tender going at a tremendous rate of speed over bad steel rails, laid unevenly on indifferent ties, is an ordinary risk to a section hand, who, standing fifteen feet from the track is struck by coal, and we must decline to so hold.

We are asked to hold, further, that a passenger train (because in a country district) can run at a rate of practically a mile a minute over a track in bad condition with a tender piled so high with coal that it will not stay in position, without rendering the company liable for an injury to its trackmen from flying coal, that is, that such combination of things does not constitute negligence, as a matter of law under the circumstances of this case, and we must decline to hold that.

We are further asked to hold, as a matter of law on the facts disclosed, that plaintiff's injury arose from a cause which no man of ordinary prudence could reasonably anticipate and hence comes within the domain of inevitable accident, and we must decline to hold that, too.

Negligence has been defined to be the "absence of care, according to the circumstances." [WILLES, J., in Vaughan v. Railroad, 5 Hurl. & Nor. (Exch.) 688.]

"Negligence," says Doctor Wharton (Wharton on Neg. (2 Ed.), sec 3), "in its civil relations, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as produces, in

an ordinary and natural sequence, a damage to another. The inadvertency, or want of due consideration of duty, is the *injuria,* on which, when naturally followed by the *damnum,* the suit is based."

"Negligence," according to another standard work (1 Shearman & Redfield on Neg. (5 Ed.), sec. 3), "constituting a cause of civil action, is such an omission, by a responsible person, to use that degree of care, diligence and skill which it was his legal duty to use for the protection of another person from injury, as, in a natural and continuous sequence, causes unintended damage to the latter."

And, as further pointed out by defendant's learned counsel, our own court has said (McMahon v. Pacific Express Co., 132 Mo. 641): "Negligence consists in doing something which a reasonably prudent man would not have done under the circumstances, or in failing to do something which a reasonably prudent man, under the circumstances, would have done."

All these definitions, with many others that might be given, mean at bottom the same thing, viz: Negligence is the absence of due care, and due care is a care adjusting itself to the circumstances of the case.

Sir Frederick Pollock in his treatise on the law of torts (Webb's Pollock on Torts (En. Am. Ed.), p. 42, *et seq.*) has announced the philosophy of the matter to be as follows:

"Liability for negligence depends on probability of consequence, *i. e.,* its capacity of being foreseen by a reasonable man. The doctrine of 'natural and probable consequence' is most clearly illustrated, however, in the law of negligence. For there the substance of the wrong itself is failure to act with due foresight; it has been defined as 'the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.' Now a reasonable

man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability. And the statement proposed, though not positively laid down, in Greenland v. Chaplin (5 Ex. 248), namely, 'that a person is expected to anticipate and guard against all reasonable consequences, but that he is not, by the law of England, expected to anticipate and guard against that which no reasonable man would expect to occur,' appears to contain the only rule tenable on principle where the liability is founded solely on negligence. 'Mischief which could by no possibility have been foreseen, and which no reasonable person would have anticipated,' may be the ground of legal compensation under some rule of exceptional severity, and such rules, for various reasons, exist; but under an ordinary rule of due care and caution it cannot be taken into account.''

To the same effect is the reasoning of Ray (Negligence of Imposed Duties, pp. 133-4), and the pronouncements of both these text-writers have been approved by this court. [American Brewing Ass'n v. Talbot, 141 Mo. l. c. 684, *et seq., ibid,* 683-4.] It is in the light of the principles happily formulated as above by Sir Frederick Pollock and adopted by the

courts that the facts and circumstances of this case must be judged.

Now, take the case at bar and apply to its facts the foregoing reasoning. The coal in this tender had the velocity of the train. It was shooting through the air like a hurricane. Would a reasonably prudent man, where his servants would naturally be exposed thereby to injury from flying coal, carry coal over a rough course in that way without confining it to metes and bounds? The tender was made, among other things, for the very purpose of holding coal in a receptacle as in a scuttle. The coal in an overloaded tender, projecting above the rim, is unconfined and held in place only by its own inertia. The track was known to be rough. The evidence shows that the old steel rails were an inch lower than the new ones at a point 60 feet east of where plaintiff was hurt. And we can liken this tender, so loaded and moving over that sort of a track at that velocity, properly we think, to a huge pistol at full cock, loaded with bullets of coal, with the momentum of the train as powder and the bad ties, steel and rough track as the trigger—likely at any instant to be fired off. We see nothing imaginary or improbable in a chunk of coal, lying unconfined on an overloaded tender, jarred by a rough track, leaving its position; so that the cause of this chunk of coal shooting forth is evident. That it would shoot forth, under the circumstances in proof, any man of ordinary prudence could reasonably anticipate—could "forecast as probable." Hence, ordinary care required it should have been anticipated and reasonably guarded against.

It is true that a servant assumes the ordinary risks incident to the dangers of his occupation; but he does not assume the risk arising from the supervening and active negligence of the master, and we are unwilling to hold as a matter of law that a railway trackman (however active) assumes the risk of successfully dodging chunks of coal flying about as this one did.

The fact that the effect in this case was somewhat unusual can not defeat a recovery.  The fact that but few accidents of this sort are recorded in the books cannot save the situation for defendant; for it is self-evident that the question of injury to a man's knee from a flying chunk of coal depends alone upon the coal and the knee coming in contact.  If the knee was not there, the knee would not be injured; if the knee was there, then—it is another story.  In this case both the man and his knee were at a proper place, at a place defendant's lessee had reason to anticipate their presence. The rule of law controlling in this particular is thus formulated: ''The liability of a person charged with negligence does not depend on the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the *very injury complained of*; but he may be held liable for anything, which after the injury is complete, appears to have ben a natural and probable consequence of his act or omission.'' [Fishburn v. Railroad, 127 Iowa l. c. 492, *et seq.*, and cases cited.]

The exact combination of circumstances in judgment is not new to the courts and the weight of authority is against defendant's contentions.  Thus:

In Schultz v. Railroad, 67 Wis. 616, it was held that a trackman assumed the risk of being struck by a piece of coal from a top-heavy and going tender when he knew of a custom to so overload tenders and thereafter continued in his master's employ.

But in Railroad v. Moranda, 108 Ill. 576, plaintiff (the foreman of a section gang) was struck by a piece of coal from the tender of a rapidly moving passenger train, and it was held he was entitled to recover.

And in Railroad v. Wood, 63 S. W. 164 (a case decided by the Court of Civil Appeals of Texas) the same conclusion was reasoned out in a case not as strong as the one at bar.

So in Doyle v. Railroad, 77 Iowa 607, plaintiff (an

employee) was injured by a coupling pin hurled from a platform of a car, whereon the pin had been lying loose, and a recovery was allowed.

And in Ford v. Railroad, 124 N. Y. 493, plaintiff's intestate (an employee) was killed by heavy timbers insecurely fastened and which fell upon him from a passing car. It was held that an action for negligence lay.

And many other cases might be cited as somewhat in point, by analogy, of which samples are Powell v. Deveney, 3 Cush. (57 Mass.) 300; Manning v. Railroad, 166 Mass. 230; Slattery v. Ice Co., 76 N. E. 459.

It is not necessary for us to hold that plaintiff could recover if the track had been in good condition, or if the speed of the train had been regulated by a care suitable to the bad track, or if the coal had escaped from a tender loaded with due care. What we hold is that all the facts combined here made this a case where the issue of negligence should have been put to the jury and was put to the jury, not in singular, but in combination, and with the finding of the jury we rest content.

The judgment is affirmed.

All concur.