## ALONZO C. LESSENDEN v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

**In Banc, December 16, 1911.**

1. **NEGLIGENCE: Contributory: Use of Steel Bar Instead of Pinch-Bar.** Plaintiff and others were ordered to move a tank, coupled to an engine, about fifty feet down a track having an incline of three inches in ten feet, to be repaired. Plaintiff used a steel bar and his fellow-servant a pinch-bar to hold the tank, while it could be blocked. Each man used his bar between the wheels and the track rail as a lever, the pin that coupled the tank to the engine was drawn, the foreman stepped away for some blocks, the fellow-servant withdrew his pinch-bar, and

the tank suddenly rolled down, pressing down the bar in plaintiff's hands, catching his foot, and the wheel ran over both legs. The testimony for plaintiff was that steel bars were constantly used in such work, and the plaintiff himself testified that the foreman told him to use it on this occasion. The foreman was present superintending the work, and saw plaintiff using the steel bar, but did not tell him to put it aside and to use a pinch-bar, but testified he had repeatedly told plaintiff not to use a steel bar in doing that kind of work, and that if he had used a pinch-bar on this occasion it would have been sufficient to hold the tank, even if the fellow-servant had pulled out his bar. It is almost an undisputed fact that the accident would not have occurred had not the fellow-servant pulled out his bar. *Held*, that an instruction, asked by defendant and given, authorizing a verdict for the defendant, if the jury found the facts to be that a steel bar was unfit for that kind of work, that plaintiff had been warned not to use it and that the using of it contributed to the accident, and their verdict for plaintiff, put an end to any further contention that plaintiff was guilty of contributory negligence in using the steel bar.

2. ————: ————: ————: **Position in Reference to Tank: Physical Facts.** In view of the admission of defendant that plaintiff's position would have been safe had the fellow-servant not withdrawn his pinch-bar from under the wheel, it is immaterial what was plaintiff's exact position when the accident occurred. And besides it is mere conjecture how he would have fallen, or that the physical facts show that it could not have occurred as plaintiff claims—while one foot was on the rail and the other five or six inches outside the rail.

3. **ACTION IN MISSOURI: Injury in Kansas: Fraud.** It is not a fraud to do what the law permits. If the laws of Missouri authorize a citizen of Kansas to bring a suit in this State, for personal injuries received in Kansas, the right of action being created by the laws of that State and defendant being within reach of the process of its courts, it is no fraud upon the law for such citizen to bring his suit in the courts of Missouri.

4. ————: ————: **Limiting Place of Suit.** A State which creates a right of action by statute may, as a condition of the exercise of that right, require the suit to be brought only in that State. To give by statute to a citizen of Kansas the right to sue a railroad company in the courts of that State alone for damages for personal injuries due to the negligence of a fellow-servant (a right he did not have at common law), is not to deprive him of any right, because without the condition that he is to sue in that State alone he has no right to sue at all. And if the courts of Missouri should decline to take jurisdiction of the suit, on the ground that the statute prescribed that the suit can

Lessenden v. Railroad.

be brought only in the courts of that State, they would only be giving full faith and credit to the law of a sister State.

5. ———: ———: ———: **Notice of Injury: To Perons in County Where Suit is Brought.** The statute of Kansas, authorizing a railroad employee to sue a railroad company for damages for personal injuries due to the negligence of a fellow-servant, does not impose as a condition to the right to sue that the suit be brought only in the courts of that State. Such a suit may be brought by a resident of that State, in the courts of Missouri, although the cause of action accrued there and process may have been served there. Our statutes (Secs. 1736, 1737, R. S. 1909) expressly authorize our courts to entertain jurisdiction of causes of action that have accrued under the laws of another State. The fact that the Kansas statute requires a notice of the injury to certain agents or officers of the company "in the county in which the action is brought" and the fact that another statute limits the venue of civil actions to certain counties, do not amount to a condition that such suit shall be brought only in the courts of Kansas.

6. ———: ———: **Sufficiency of Notice: By Dismissed Suit.** The filing of a petition in Missouri in which is stated the facts of the injury, and how, when and where it occured, and the service of process on defendant in pursuance thereof within six months after the cause of action accrued, although the suit was later dismissed, is full compliance with the statute of Kansas requiring notice of the injury to be given within eight months after it was received, etc.

7. **DAMAGES: Instruction: Not in Excess of Amount Asked.** An instruction telling the jury that if they find for plaintiff they may allow him such damages, not exceeding the amount asked in the petition, as they may believe he has sustained, etc., is not erroneous, but where the jury return a verdict for the entire amount asked, it will be considered by the court in connection with an assignment that the verdict is excessive.

8. ———: **Excessive Verdict: $25,000.** Plaintiff, thirty-six years old, engaged in moving a tank out of a roundhouse, had his feet and legs crushed; he was confined to a hospital for five months, one leg was amputated above the knee and the other six inches above the ankle; his suffering was intense; he appeared at the trial with artificial limbs, and was still suffering. The jury returned a verdict for the full amount stated in the petition, $25,000. *Held,* excessive by $10,000—the balance to bear interest from the date of judgment.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich,* Judge.

AFFIRMED (*conditionally*).

*Martin L. Clardy, Edw. J. White* and *Elijah Robinson* for appellant.

(1)   Plaintiff had no right to maintain this suit in the circuit court of Jackson county, Missouri. Under the laws of the State of Kansas suit was required to be brought either in the county where the accident occurred or in the county in which the defendant had its principal office and place of business. The accident did not occur in Jackson county, Missouri, nor did defendant have its principal office and place of business in said county. Sec. 2, chap. 379, p. 582, Laws of Kansas 1903.   The plaintiff, a resident of Kansas, where the accident occurred, could have sued the defendant, which is also a resident of Kansas, in the courts of that State; and his coming to Jackson county, Missouri, and instituting suit here was a fraud upon the law which ought not to be tolerated by the courts.
(2)   Under the statutes of Kansas the plaintiff could not maintain this suit without having served notice on the defendant within a certain time, and no such notice was served. Sec. 6312, Statutes of Kansas 1905.
(3)   Under the undisputed evidence plaintiff was not entitled to recover, and the court should have directed a verdict for the defendant. Plaintiff's theory of the case is disproved by the conceded physical facts; and the verdict is contrary to reason and ought not to be permitted to stand. Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 362; Nugent v. Milling Co., 131 Mo. 258; Lane v. Railroad, 132 Mo. 4; Huggart v. Railroad, 134 Mo. 680; Payne v. Railroad, 136 Mo. 583; Oglesby v. Railroad, 150 Mo. 188; Hook v. Railroad, 162 Mo. 598; Petty v. Railroad, 179 Mo. 687; O'Keef v. Railroad, 81 Mo. App. 386; Covell v. Railroad, 82 Mo. App. 180; Spohn v. Railroad, 87 Mo. 74; State v. Fannon, 158 Mo. 149; Spiro v. Railroad, 102

Mo. App. 250. This verdict is against every reasonable probability that might result from the evidence, and the inevitable conclusion must be that it was the result of partiality or prejudice on the part of the jurors, and a judgment based on such a verdict should be reversed. Jeans v. Morrison, 99 Mo. App. 208; Gage v. Trawick, 94 Mo. App. 307; Cook v. Railroad, 94 Mo. App. 417; Baker v. Stonebraker, 36 Mo. 345; Price v. Evans, 49 Mo. 396; Bautrain v. Railroad, 78 Mo. 44; Rosecrans v. Railroad, 83 Mo. 678; Spohn v. Railroad, 87 Mo. 74; Cannon v. Moore, 17 Mo. App. 92; Whitsett v. Ransom, 79 Mo. 258; Freiz v. Fallon, 24 Mo. App. 439; Empey v. Railroad, 45 Mo. App. 422; Walton v. Railroad, 49 Mo. App. 620; Glick v. Railroad, 57 Mo. App. 97. (4) The court committed error in permitting plaintiff to introduce in evidence the petition in a former suit. It was not admissible from any standpoint; and it was liable to influence the jury, because it contained statements as to how the accident occurred. (5) Plaintiff was guilty of negligence, which directly contributed to the accident, and therefore was not entitled to recover. If he had used the pinch-bar which was provided for doing the kind of work in which he was engaged, the accident would not have occurred; but he deliberately used a bar that was not adapted to that kind of work. As shown by the testimony of Dr. Craig, he recklessly got in front of the moving car, which position he, as an experienced railroad man, must have known was dangerous. (6) The damages assessed by the jury were excessive and showed partiality or prejudice on their part. Spohn v. Railroad, 87 Mo. 84; Adams v. Railroad, 100 Mo. 555; Ice Co. v. Tamm, 90 Mo. App. 202; Chlander v. Transit Co., 112 S. W. 253; Whalen v. Railroad, 60 Mo. 323; Nichols v. Glass Co., 126 Mo. 55; Furnish v. Railroad, 102 Mo. 438; Chitty v. Railroad, 166 Mo. 435. (7) The court committed error in giving plaintiff's instruction number 3. Said instruction amounted

practically to a statement that a verdict for any sum up to $25,000, would be satisfactory to the court. Bryan v. Acee, 27 Ga. 87; Gilbertson v. Railroad, 43 N. Y. Supp. 732; Railroad v. Austin, 69 Ill. 428; Fordyce v. Nix, 23 S. W. 969; Oglesby v. Railroad, unpublished opinion.

*Guthrie, Gamble & Street, Boyle & Howell* and *A. F. Smith* for respondent.

(1) . The brief of defendant does not raise any question as to the negligence of the defendant. The undenied act of Colyer in pulling out the bar while the foreman was after the blocks at a time when the men had been ordered to hold the tank until the blocks were procured, was the grossest negligence. The fact that Colyer was a green man and had never been instructed by the defendant does not exculpate the defendant. (2) The statement of facts is a sufficient answer to the charge of contributory negligence. Under them, the issue, if there was any, was for the jury. (3) The right to sue in Jackson county, Missouri, was before the Supreme Court of this State in Newlin v. Railroad Co., hereinafter cited, in which case we filed a brief *amici curiae,* on account of the different cases in which we were interested in which the question was involved. This same defendant has raised the same question twice in the Kansas City Court of Appeals. The question has also been decided by the Supreme Court of the United States. In each of the cases the decision was adverse to defendant's contention. Newlin v. Railroad, 222 Mo. 375; Husted v. Railroad, 143 Mo. App. 627; Philes v. Railroad, 141 Mo. App. 561; Railroad v. Sowers, 213 U. S. 55. Courts differ as to whether or not actions of this kind are transitory. But the legislatively declared policy of this State is to throw its courts open to suitors in cases of this character. Laws 1891, p. 61; R. S. 1899, sec. 547; Laws 1905, p. 95. These statutes are intended to cover

the case where a transitory action of this character requires special legislation to support it; but they are declaratory of the Missouri policy, the Legislature assuming that no legislation was necessary to support actions in our courts in cases of this character, except where it was necessary to qualify and confer authority upon the special plaintiff. The Legislature rightfully so assumed. Burdict v. Railroad, 123 Mo. 229; Charlton v. Railroad, 200 Mo. 431. The courts of Kansas recognize the transitory character of all causes of action not specifically localized and not incapable of enforcement in other jurisdictions whether such causes of action arise from contract or in tort, and whether, if they arise in tort, they arise from common law negligence or breach of statute. Railroad v. Kannalley, 39 Kan. 1; Matheson v. Railroad, 61 Kan. 667.

VALLIANT, C. J.—Plaintiff recovered a judgment in the circuit court of Jackson county against defendant for $25,000, as for personal injuries alleged to have been suffered by him through the negligence of a fellow-servant. From that judgment the defendant prosecutes this appeal.

The accident occurred at Osawatomie in Miami county, Kansas, where the plaintiff resided and through which the defendant's railroad runs.

The action is founded on a statute of Kansas making a railroad company liable for injuries inflicted on an employee through the negligence of a fellow-servant. The following statement we take from appellant's brief:

"At the time of the accident in question plaintiff was employed by the defendant in what is known as the tank shop at Osawatomie, Kansas, and had worked for the company eleven years, seven years of which time he had worked with the tank crew at Osawatomie.

"The accident occurred about 9:15 a. m. at the defendant's roundhouse at Osawatomie. The plaintiff

claimed that he, together with three other men, were instructed by the foreman to move a tank from the roundhouse out onto the track, for the purpose of putting a new wheel on it; that the track upon which the tank was standing was down grade from the door of the roundhouse to the turntable, which was about fifty feet distant, and that the fall was about three inches in ten feet; that the tank was coupled to the engine, and, in order to loosen the pin, it became necessary to put bars under the rear wheels of the tank and pinch it up toward the engine; that an employee named Colyer took a pinch-bar and put it under one wheel, and he, plaintiff, took a steel bar and put it under the other wheel, and pinched the tank up about a fourth of an inch so as to loosen the pin, which was then withdrawn, and thereupon the foreman told him and Colyer to hold the tank until he, the foreman, could get some blocks to block it at the point where they wished to put it; that while he was holding his bar, Colyer removed his, thus permitting the tank to run back on the bar that plaintiff was holding and mashed it down to the rail, catching his foot and throwing him down, so as to permit the tank to run over both of his legs; that he was standing on the left hand side of the track facing the tank, with the toe of his right foot on the rail on the left side, and his left foot five or six inches ouside of the rail."

Plaintiff's testimony tended to prove as follows:

The usual way to take up the slack for this purpose was to put another engine behind the tank to push it up, but when an engine was not available the work was done by men using bars to "pinch" the tender up. A quarter of an inch was sufficient to pinch the tender to loosen the pin.

When the tender was pinched up enough, wooden blocks were to be put under or against the wheels to hold it in place or keep it from running back until they could pull the pin, then the tender would be moved

back towards the turntable by a process they called "blocking back."

The foreman of the repair crew superintended the work of pinching and blocking. Two men were sufficient to do the pinching, each with a bar to each of the rear wheels. There were two kinds of bars usually used in such work, one was called a pinch-bar, the other a steel-bar. The pinch-bar was larger, but both kinds were made under the direction of the foreman for this kind of work and the men were instructed to use both in such work. On this occasion the plaintiff was using a steel bar and Colyer a pinch-bar; the plaintiff testified that the foreman said to him, "Take that steel bar, as Colyer has got a pinch-bar." The foreman was standing by them and directing the work. The plaintiff with the steel bar and Colyer with the pinch-bar stood behind the rear wheels of the tank, inserted the points of their bars between the wheels and the rails, procured their leverage and pinched the tank up about a quarter of an inch, then the foreman said, "hold her boys, until I get some blocks." While the foreman went for the block some one hallooed that the pin was out, then Colyer pulled his pinch-bar out, and the weight of the tank being thrown on the steel bar held by plaintiff forced it down on the rail, caught his foot under it and threw him in such a position as to cause the tank to run over both legs, which resulted in the amputation of both. The plaintiff's testimony also was to the effect that Colyer was a new man in the work and inexperienced, and that if he had held the pinch-bar in place as he should have done it would have been sufficient, with the force of the steel bar held by the plaintiff, to have held the tank in position until the blocks could have been placed.

For the defendant the foreman testified that he did not order the plaintiff to use the steel bar on this occasion; and had repeatedly told plaintiff not to use that kind of a bar in doing that kind of work; that if

the plaintiff had had a pinch-bar on that occasion it would have been sufficient to hold the tank, even if Colyer had pulled his bar out.

A witness, who was division surgeon for the railroad company at that time and place, and who attended the plaintiff after the accident, testified that he stated to him that when the tank started to roll back he attempted to stop it by putting his bar under the wheel and the wheel ran on the bar and knocked him down and caught his foot under it, also that he said no one was to blame. Plaintiff denied making that statement.

I. On the facts of the case defendant presents two points, viz.:

1. The physical facts show that the accident could not have occurred as plaintiff claims it did.

2. Plaintiff was guilty of contributory negligence.

On the first proposition defendant says: ''If he had been standing in the position that he claims he was, and the wheel had run on the bar mashing it down, he would have fallen forward and the wheel would have run over his body instead of his legs.'' That is mere conjecture. No one can tell for certain just how the man would fall under such conditions. The foreman described the plaintiff's position while holding the bar as somewhat different from that as described by the plaintiff, and on that testimony the defendant argues that plaintiff was guilty of contributory negligence, and defendant asked and the court gave an instruction on that theory based on the foreman's testimony, but the jury found to the contrary. Besides, it is immaterial in view of the main fact, which even the defendant's testimony admits that the position would have been safe if Colyer had not withdrawn his bar.

Defendant's main point on the facts is that the plaintiff was guilty of contributory negligence in using the steel bar.

On this point the testimony was somewhat conflicting. The testimony for the plaintiff was to the effect that steel bars were constantly used in such work, and the plaintiff himself testified that on this occasion the foreman told him to use it. The foreman denied that, and testified that he had repeatedly told plaintiff not to use such a bar in such work. But whether or not the foreman told him on that occasion to use the steel bar, the fact is the foreman was there superintending and directing the work and he saw plaintiff using the bar, yet did not order him to put it aside and take a pinch-bar. And, besides, it appears as an almost undisputed fact that the accident would not have happened if Colyer had not pulled his bar out. Defendant asked an instruction, which the court gave, authorizing a verdict for the defendant if they found the facts to be that the steel bar was unfit for that kind of work, that plaintiff had been warned not to use it and that the using of it in this case contributed to the accident. The jury found against the defendant on that instruction, and that ends it.

We find no error in the record as based on the facts relating to the merits of the case.

II. Appellant's most serious contention is based on its construction of the statute of Kansas on which the plaintiff's case is founded. That statute is found in sections 6312 and 6313, General Statutes of Kansas 1905, and is as follows:

"Sec. 6312. Every railroad company organized or doing business in the State of Kansas shall be liable for all damages done to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage: *Pro-*

*vided,* That notice in writing that an injury has been sustained, stating the time and place thereof, shall have been given by or on behalf of the person injured to such railroad company within eight months after the occurrence of the injury: *And provided further,* That where any person injured is in the hospital of or under charge of the railroad company causing the injury, or is prevented by the effects of said injury, the said eight months shall not begin to run until such injured person is discharged from said hospital or care of said railroad company: *Provided further,* That said notice need not state whether or not suit is intended to be brought. [Laws 1903, ch. 393, sec. 1, as amended by Laws 1905, ch. 341, sec. 1, June 8.]

. "Sec. 6313. The service mentioned in section 1 hereof may be served by a written copy thereof, by the person injured or any one on his behalf, or, if he die, by the person or persons entitled to recover for said injury, upon any person designated by the railroad in the county in which the action is brought, as provided for in section 4499* of the General Statutes of Kansas of 1901, or if no such person has been designated or appointed, as in said section provided, then upon any local superintendent of affairs, freight agent, agent to sell tickets, or station-keeper of such company or corporation in such county, or such service may be made by leaving a copy thereof at any depot or station of such company or corporation in such county, with the person in charge thereof or in the employ of such company or corporation, and such service shall be held and deemed complete and effectual. Proof of such service shall be made by affidavit of the party making the same, or other person knowing the facts. [Id., sec. 2.]"

These and other statutes of Kansas were pleaded and introduced in evidence, as was also a decision of the Supreme Court of that State construing section 6312.

(1)   Appellant contends that the courts of Kansas alone had jurisdiction of this case and that "the effort to enforce plaintiff's cause of action in the courts of this State was a fraud upon the law." The argument is that the plaintiff being a resident of Kansas, the cause of action having accrued in that State, the right of action having been created by a statute of that State and the defendant being within reach of the process of the courts of Kansas, it is a fraud to bring the suit in Missouri. This point was pressed in the trial court and one of the counsel for plaintiff was called on by defendant to testify as to why the plaintiff should leave his own State and come here to sue; the answer was that he thought the course of procedure in the trial of such causes in Missouri was more favorable than that in Kansas; referring especially to our law which allows nine members of a jury to return a verdict in a civil case.

There was nothing in the conduct of the case to justify the charge of fraud. The only act specified as constituting the fraud is the bringing of the suit in Missouri instead of in Kansas. · If our law authorized the plaintiff to bring his suit here it was not a fraud for him to do so. It is not a fraud to do what the law permits. We pass then to a consideration of defendant's earnest contention, that this action could have lawfully been brought only in one of the courts of Kansas.

Sections 1736 and 1737, Revised Statutes 1909, expressly authorize our courts to entertain jurisdiction of causes of action that have accrued under the laws of another State. But it is contended by appellant that in case the statute of the other State which creates the right of action couples with it a condition that it shall be enforced only in the courts of that State, then the right of action cannot be carried out of that State. Against this proposition counsel for the plaintiff refer to Newlin v. Railroad, 222 Mo. 375. That

was a cause of action which arose under a statute of Kansas, but it was not the statute under which this cause of action arose, and the statute in that case did not contain the conditions that are contained in the statute we now have to consider; that was the Lord Campbell's statute of Kansas, this is the Kansas Fellow-Servant law, and this statute imposes certain conditions on the right of action created. Counsel for plaintiff also refer to Railroad v. Sowers, 213 U. S. 55, to show that the State or territory where the cause of action accrued could not by statute prohibit the plaintiff suing in another State, or prevent another State from entertaining jurisdiction of the action. But that was a case of common law right of action for personal injuries; it was not a right of action created by the statute of the territory where it accrued. The territory of New Mexico, where that cause of action accrued, had enacted a statute which required of a party in such case, as a condition to his right of recovery, within a certain time to give a certain kind of notice, and the statute also undertook to impose as a condition to his right of recovery that he should sue only in a court of that territory. He sued in the State of Texas. It was held in that case that that part of the statute which undertook to forbid the plaintiff suing on his cause of action in another State, or to prevent the other State from entertaining jurisdiction of the cause, was of no effect, but that the condition imposed by the statute relating to the notice to be given was valid. Therefore, neither of those cases decides that a State which creates a right of action by statute cannot, as a condition of the exercise of that right, require the suit to be brought in a court of that State only.

We see no reason why a State which creates a right of action may not impose such a condition. To say to a plaintiff, We give you this right of action on condition that you sue to enforce it only in one of the

courts of this State, does not deprive him of any right because without the condition he has no right of action at all. The courts of another State to which the party might desire to carry his cause are not deprived of any jurisdiction, because, there being no such right of action under their laws, nothing is taken from them. And if the State court to which the cause of action is carried should decline to take jurisdiction of it, on the ground that the statute of the State which created it forbade its removal, it would only be giving full faith and credit to the law of the sister State. But if the statute which creates the right of action does not make it a condition that it be sued on only in a court of that State, and if suit is brought on it in a court in another State which entertains jurisdiction of it, that court must try it by the laws of the State whence it came, and enforce the conditions grafted on the right of action by the statute which created it.

By the common law which was in force in Kansas at the time this cause of action accrued (except as altered by statute) no right of action by a servant against his master existed for an injury inflicted by the negligence of a fellow-servant. The only right of action therefore that this plaintiff had for his injuries was given by the statutes of that State, section 6312, General Statutes of Kansas 1905. Turning to that section we see that the right is given on condition that the party who would exercise it must give a certain notice, but there is no condition therein imposed in the nature of forbidding the party to carry his cause of action to the courts of another State. In the next section, however, it is prescribed how the notice required may be given, that is, it provides that it may be given by serving a written copy on one or another of the persons therein mentioned, as agent of the railroad company, in the county in which the suit is brought. Counsel for appellant construe that section to mean that the notice cannot be served in any other

way, and then referring to other sections of the Kansas statutes, contained in its Code of Civil Procedure, wherein the venue of civil actions is limited to certain counties, the inference is drawn that the Legislature of Kansas meant to say that a suit under section 6312, could be brought only in one of the counties in Kansas where, by the Code of Civil Procedure, the venue of civil actions is laid. We are satisfied that such was not the purpose of section 6313. We agree with our Kansas City Court of Appeals in the interpretation which it gave that section in Husted v. Railroad, 143 Mo. App. 623. In the opinion of the court in that case by Judge ELLISON, at p. 630, it is said: "A notice must be given and this requirement is not made to depend upon the place where the suit is to be afterwards brought. It ought not to be said that requiring a notice was intended to deprive the right of action of its transitory character and compel a suit thereon to be instituted in Kansas. That would be giving broader significance to the terms of section 6312 than its language justifies. And yet that is the effect of sustaining defendant in its position that the notice, in *all* instances, must be served as directed in section 6313; for that section only contemplates a service in the county in Kansas in which the suit is brought. The notice must be given as a prerequisite to instituting the action; but the mode of service of such notice is not a condition to such right. The statute of Kansas prescribing the way in which a notice may be given is intended to govern the service if the action is begun in that State. It is a matter of form of procedure and cannot have effective force and application when the action is brought in a foreign State. It is no more entitled to control outside the limits of Kansas than would any prescribed form of pleading, or service of writs, in any transitory action."

We hold that under sections 1736 and 1737, Re-

vised Statutes 1909, the circuit court of Jackson county had jurisdiction of this cause.

(2) The next question is, was the notice, that the Kansas statute required, given? The statute required the notice to be given within eight months after the injury was suffered, provided that, if the person injured be in the hospital of or under the charge of the railroad company, or prevented by the effects of the injury from giving notice, the eight months shall not begin to run until he is discharged from the railroad company's hospital. The injury in this case occurred August 23, 1905, and plaintiff was taken to defendant's hospital and remained there until January 20, 1906. The evidence shows that the plaintiff caused the notice to be served as follows: December 14, 1905, on a ticket agent and station-keeper of defendant in Wyandotte county, Kansas; June 7, 1906, on a station agent of defendat in Miami county, Kansas, where the accident occurred; June 14, 1906, on a freight agent of defendant at Kansas City, Missouri; June 12, 1906, he mailed notice in registered letter addressed to Missouri Pacific Railway Company at St. Louis, Missouri, also one addressed to Hon. George J. Gould, president of defendant, New York, and in each case got back through the postoffice a receipt showing delivery of the registered letter. We mention all those notices only to show that the plaintiff was not unmindful of his duty to cause such a notice to be served, but we deem it unnecessary to pass judgment on the question of their sufficiency, because of another notice which we think is unquestionably sufficient, to-wit: On December 15, 1905, plaintiff instituted suit against the defendant on this same cause of action in Jackson county; the summons was served December 19, 1905, and defendant filed its answer thereto February 6, 1906. The petition in that case stated the facts that gave full notice of the alleged injury and how, when and where it occurred. For some reason not stated

in the record that suit was dismissed, and this one instituted June 8, 1906.

We hold that the notice given by that suit satisfied the requirement of the Kansas statute.

III.   Appellant assigns for error that the damages are excessive and that the court erred in its instruction to the jury on the question of damages. These two assignments are so closely related that we will consider them together as one.   The instruction complained of was:   "The court instructs the jury that if they find a verdict for the plaintiff they may allow him such damages, not exceeding the sum of twenty-five thousand dollars, as they believe he has sustained by reason of the injuries (if any) to his legs, directly caused by the negligence (if any) of the defendant, as submitted to you in the other instructions herein."   The jury assessed the damages at $25,000.

The giving of an instruction mentioning the amount of damages as stated in the petition and warning the jury not to exceed it in their assessment, has for so long a time been the practice in the trial of cases of this kind, and approved by this court, that it has become a settled practice, and therefore we would not now be justified in condemning such an instruction as reversible error unless we were satisfied that in the particular case the instruction worked an injury to the appellant.   The instructions of this kind that have passed in review in this court are varied in form of expression, some being more and some less liable than others to be understood by the jury as a suggestion from the court as to the amount they ought to award.   A good deal depends on the form or words used in the instruction.

The amount of damages alleged in a petition is often so far beyond what the facts of the case justify that the trial judge would not allow a verdict to stand if the jury gave the amount demanded, yet the same

judge, following the beaten path, would doubtless give
an instruction indicating that the jury were authorized
to assess the plaintiff's damages up to but not exceed-
ing that amount.  The giving of such an instruction
might be contrary to what the judge thought was right,
but he would yield to what he understood the law to
be as announced by this court.  But whilst this court
has said that it was not error to give such an instruc-
tion, it has never said that it would be error to refuse
to give it.  The trial judge is not compelled to give it
when the facts do not demand it.  The case of Partello
v. Railroad, 217 Mo. 645, to which respondent refers to
sustain the instruction given in this case, is a fair il-
lustration of what is above said.  In the Partello Case
the damages claimed in the petition were $50,000, the
jury were instructed not to exceed that amount, they
assessed plaintiff's damages at $30,000;  plaintiff,
while the motion for a new trial was pending in the
circuit court, voluntarily remitted $10,000, and the
judgment was entered for $20,000.  In this court the
judgment was reversed on the ground that the assess-
ment of damages was so out of proportion to the in-
jury sustained that it could be attributed only to undue
sympathy, amounting in legal effect to prejudice and
passion.   Yet the trial judge gave that instruction
after he had heard the evidence in the case.  He doubt-
less labored under the erroneous impression that it
would have been error to have refused it.  But whilst
the long practice authorizes the giving of such an in-
struction, and therefore it is not reversible error to do
so when counsel ask it, yet when the jury return their
vedict and the question of excessive damages arises the
probable effect of the instruction with its particular
wording will be taken into account.

There is nothing more puzzling to an honest jury
than the ascertaining of the proper amount at which
to assess the plaintiff's damages in a case of this
kind, and it is not a less difficult problem to the judge

when he comes to review the subject. If property is destroyed there are safe rules by which compensation may be estimated, but when it comes to the question of ascertaining the amount of damages to be awarded as the compensation for the loss of limbs and impairment of health and strength, there is no certain measure. It will not do to say, Put yourself in the sufferer's place, for you cannot do that, nor can it be asked for what amount you would be willing to suffer the same loss, for you would not be willing to endure the same for any amount; yet the law calls for fair compensation and the jury must decide the question as best they can. And the question must be decided not only with the purpose of rendering justice to the plaintiff, but justice to the defendant also. In the absence of any fact that would justify punitive damages, the award should be only fair compensation for the injury suffered.

Fully appreciating the difficulty if not the impossibility of making an accurate estimate of the plaintiff's damages in this case we are satisfied that the jury's assessment was excessive, and, since the jury in their difficulty adopted the exact amount mentioned in the instructions, it is not unlikely that they took that as an intimation of what the court thought would be a proper award. At the time of the accident the plaintiff was thirty-six years old, he had been for eleven years in the service of the defendant in its switch yard at Osawatomie, Kansas; he was a good workman, he belonged to what they called the tank crew; he worked under a foreman; what wages he earned does not appear; he was not a skilled mechanic. As a result of the accident he was confined to the hospital nearly five months, his right leg was amputated four inches above the knee and the left leg six inches above the ankle.

He appeared at the trial with artificial limbs to supply the loss. His physical suffering must have

been very great at the time of the accident and during the period of his confinement in the hospital and he suffered pain at the time of the trial. We think the jury would have been justified in rendering a verdict for $15,000, but we think that $25,000 was excessive. If therefore the plaintiff within ten days will remit $10,000 of his award the judgment will be affirmed for $15,000, as of date April 10, 1907, which is the date of. the judgment appealed from, but if the plaintiff does not enter the *remittitur* above specified the judgment will be reversed and the cause remanded for a new trial. *Lamm, Ferriss ,Kennish,* and *Brown, JJ.,* concur; *Woodson* and *Graves, JJ.,* dissent.