JAMES BRACKETT v. JAMES BLACK MASONRY & CONTRACTING COMPANY, Appellant.—32 S. W. (2d) 288.

Division Two, October 13, 1930.

388

W. E. *Moser* and *Hensley, Allen & Marsalek* for appellant.

*Jones, Hocker, Sullivan & Angert* and *Mosman, Rogers & Buzard* for respondent.

DAVIS, C.—This is an action for damages for personal injuries based on the relation of master and servant. The jury returned a verdict for $30,000, but as plaintiff assented to a *remittitur* of $7,500 as a condition to the overruling of a motion for a new trial, judgment was entered in favor of plaintiff against defendant for $22,500. Defendant appealed.

The evidence submitted in behalf of plaintiff warrants the finding that, on June 9, 1926, plaintiff was a laborer in the employ of defendant, a corporation, then engaged in the performance of its contract to construct the concrete work of the Kansas City Reservoir. At the time of the accident the work in progress was the building of the south wall of a coagulating basin. The wall, when finished, was to be 1000 feet in length and twenty feet in height. The work comprised a main and a weir wall, erected in sections of seventy feet. To fashion the wall, it was necessary to build lumber forms in which to pour concrete to harden. These forms were made in panels ten feet in length, extending the height of the wall, and were pushed into position after their erection. The particular section of the main wall had been completed and the erection of the weir wall was in progress.

Defendant had constructed parellel with the form, east and west, about eighteen feet from the ground, a scaffold approximately seventy feet in length. The footboard or floor of the scaffold consisted of boards two inches thick, from eight to twelve inches wide, and from ten to sixteen feet in length. Supports extended horizontally from the side of the form, across which the footboard was laid. Both plaintiff's and defendant's evidence shows that footboards were not fastened or nailed in any manner. Some of plaintiff's witnesses testified that the scaffold was braced with one diagonal, and that it was without a ribbon brace; also, that with the bracing used on the scaffold, the footboard swayed. The usual and customary method of constructing a scaffold was to build x-braces between each of the upright supports, or to run a ribbon brace from the ends of the scaffold. Defendant's evidence tended to show that the scaffold was equipped with x-braces and a ribbon brace. Plaintiff's evidence tended to show that the foot or platform board of this scaffold was warped and uneven at the west end, and would tip and roll when stepped or walked on. It was customary to nail the footboards to keep them from tipping and flying up. The footboard at the west end extended a foot or eighteen inches beyond the last support.

One Siegfried, a carpenter, was directed by defendant's foreman to mount the scaffold and saw off a piece of lumber, called a "whaler,"

to permit the form to be pushed to position. On mounting the scaffold it wiggled and swayed. While standing at the extreme west end of the footboard of the scaffold and while sawing, the footboard tipped or rolled, thus causing him to fall on plaintiff eighteen feet below him, while plaintiff was in a stooped position, breaking his neck and otherwise injuring him. Siegfried said, ''The plank either tilted or I stepped over on the end and it flew up, one or the other . . . . The boards either tipped or turned over . . . Well, either the scaffold tipped—tipped, rolled over sideways, a warped board, or I was too far over the ledger board . . . It was not nailed down, because I remember placing myself and looking to see where I was standing and it tipped with me or rolled like.''

Defendant's evidence tended to show that if the footboard was unfastened, warped and uneven, it would not be safe; that if a scaffold board tips and tilts and lets a man fall off, there is something wrong with it somewhere. The nailing of the board would not necessarily take the warp or twist out of it, nor prevent it from teetering. A shim should be put under it. If it is not, there is a possibility that it may roll.

Other facts, relevant to the issues raised, will be adverted to in the opinion.

I. Defendant asserts that the trial court erred in refusing to direct the jury to find for it. The contention is based on Siegfried's testimony that either the scaffold board tipped, that is, rolled over sideways because it was warped, or that he stepped on the end beyond the supports, thus causing an overbalance by his weight on the board. Defendant contends that, if Siegfried's fall resulted from the latter cause, it was not negligent and consequently not responsible. It then invokes the rule as applicable that, if the evidence shows that the injury may have resulted from one of several causes, for one of which only the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which defendant is liable produced the result, and if it is left to conjecture, then plaintiff's action must fail.

Plaintiff, however, asserts that the evidence showed clearly a violation of the scaffolding statute. [Section 6802, R. S. 1919.] The statute reads: ''All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon. All persons engaged in the erection, repairing or taking down of any kind

of building shall exercise due caution and care so as to prevent injury or accident to those at work or near by."

(a) We think there is no doubt but that the construction of a reservoir was the erection of a building within the purview of the statute. The phrase, "any kind of building," is to be interpreted *structure,* which is defined as *that which is constructed,* or *the arrangement and union of parts in or the manner of construction or organization of a body or object,* or *construction.* It is evident, we think, that the statute covers a structure.

Moreover, we think the statute was intended to protect persons working on the premises, not only against the falling of materials, but against injury from the falling of a person therefrom, due to the negligence of the erector of the structure in failing to well and safely support the scaffold and to so secure same as to prevent the falling of materials or persons. The statute was intended to cover and does cover injuries received by a person underneath a scaffold by reason of the falling of a person from the scaffold.

Under the statute, the defendant is liable for plaintiff's injuries whether they were caused by the scaffold board tipping, or by its flying up when Siegfried stepped on the end of it. As defendant constructed the scaffold, it was negligent in providing a warped footboard, in failing to fasten the board, and in failing to secure it with proper braces. The evidence tends to show that it was guilty of acts of commission and omission in those respects, and, consequently, the issue was for the jury. If the board rolled and caused Siegfried to fall either because it was warped or because it was not securely braced, defendant was liable. Moreover, if Siegfried's weight upon the projecting end caused it to fly up and Siegfried to fall on plaintiff, defendant for that reason is responsible, for it failed to properly fasten the board as the statute required it to do, and that failure was negligence. [Dyer v. W. M. Sutherland Bldg. & Const. Co., 13 S. W. (2d) 1056.]

(b) The evidence does not tend to show that plaintiff was negligent in any degree. Even though we could say that Siegfried was negligent, it is not to be charged to plaintiff. If defendant placed a warped footboard in the scaffold and the footboard tipped or rolled, thus causing Siegfried to fall on plaintiff, defendant was careless. If Siegfried stepped upon the end of the footboard and that fact constituted negligence, Siegfried's negligence concurred with that of defendant, thus rendering defendant responsible under the familiar rule that the concurrent negligence of the master and another, if it be a proximate cause of the injury, renders the master liable. [Johnson v. American Car & Foundry Co., 259 S. W. 442.]

II. Plaintiff's witnesses were permitted to testify that the lumber used in the construction of the scaffold had been previously used in the work and that it was allowed to remain in the field exposed to the sun and the elements. Defendant asserts that the evidence was not within the averments of the petition that the footboard was uneven. While the pertinent issue on this phase of the case was the uneven and warped condition of the footboard, nevertheless it was proper to develop the kind of lumber used in building the scaffold by showing the surrounding facts and circumstances. The evidence tended to show the condition of the lumber used in the scaffold, and was within the averments of the petition.

III. The deposition of a witness residing in Arkansas was taken by plaintiff. The defendant cross-examined him, and in doing so propounded leading questions. At the trial, plaintiff read the direct examination of the witness in the deposition, and defendant refused to read the cross-examination. Thereupon plaintiff asserted the right to read the cross-examination of the witness, and the defendant objected to the reading of it only on the ground that it contained leading questions.

A deposition on file, if otherwise legal, may be used by either party to the suit. The leading questions were propounded by defendant. Under the authorities, the whole deposition, when properly taken and filed in the court, is available to either party. [Greene v. Chickering, 10 Mo. 109; McClintock v. Curd, 32 Mo. 411; Jefferson Bank v. Merchants Refrigerating Co., 236 Mo. 407, 139 S. W. 545; 18 C. J. 731, 735.] In Doggett v. Greene, 254 Ill. 134, 98 N. E. 219, the identical question was ruled against defendant's contention.

IV. On direct examination, plaintiff testified that he was in the World War, that he fought every day, but that he was not injured. Plaintiff's theory of the admission of the evidence was his previous condition of health. Defendant says the reason assigned was a mere subterfuge, and that its real purpose was to arouse the sympathy of the jury. The statement that, before he came to this country, he had "been in the war," came in without objection, although an objection was interposed after the answer. No motion to strike out the evidence was made, and, therefore, no issue obtains.

V. Plaintiff's Instruction 1 is challenged. It is said to be erroneous because it enlarges the issues in one respect and unduly confines them in another.

(a)   The instruction commences with a statement that the law made it the duty of defendant to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work and to maintain said place in a reasonably safe condition.   It then proceeds: "and if you find and believe from the evidence that defendant was negligent and careless in the construction and maintenance of said scaffold," etc.   On the enlargement of the issues, defendant's contention runs:

"There is no allegation in the petition that the defendant rendered plaintiff's place of work unsafe by permitting the use in the scaffold of a board which was loose, uneven, unfastened and likely to tip and tilt.   The only allegation of the petition bottomed on a violation of the defendant's duty to provide plaintiff a safe place in which to work is allegation No. 4, to the effect that the place was unsafe because the defendant ordered and directed plaintiff to work under and near said scaffold which was loose and insecure, when defendant knew or should have known that said condition was likely to result in injury to plaintiff.   On the issue of negligence in failing to provide plaintiff a safe place in which to work, the instruction should have confined the jury to the consideration of the facts alleged in the fourth assignment of negligence, with reference to the looseness and insecurity of the scaffold as a whole.   If, on the other hand, it was the intention to submit the allegation of negligence in the construction and maintenance of the scaffold, then the opening sentence of the instruction was inappropriate and confusing in its reference to the defendant's duty to provide a safe place."

The fourth assignment of negligence in the petition reads: "The defendant negligently and carelessly failed to furnish and provide plaintiff a reasonably safe place in which to work in that the defendant ordered, directed and required the plaintiff to work under and near said scaffold which was loose and insecure, when the defendant knew or should have known that said conditions were like to result in injury to plaintiff."

We think that defendant's position is untenable.   The instruction, hypothesizing the duty of defendant to exercise ordinary care to furnish plaintiff a reasonably safe place to work and to exercise ordinary care to keep and maintain said place in a reasonably safe condition, and requiring a finding that the scaffold was loosely constructed and maintained and insecurely supported, and that the footboard in it was loose, uneven, unfastened and likely to tip and tilt, was correlated to the fourth assignment of negligence in the petition.   If plaintiff was required to work under a scaffold which was loose and insecure, and was injured by reason thereof, defendant violated its duty with respect to furnishing and to maintaining a reasonably safe place to work.   Moreover, if the scaffold was

loosely constructed and maintained and insecurely supported, with a footboard in it, loose, uneven, unfastened and likely to tip and tilt, then defendant also violated its duty with respect to plaintiff's place of work. It is evident, we think, that the instruction does not enlarge the issues.

(b) It is said that the instruction unduly confines the issues, because it fails to require the jury to find that defendant knew or should have known that the condition of the scaffold was likely to result in injury to the plaintiff.

The rule as to a defendant's duty to anticipate an injury is stated in Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, l. c. 710, 120 S. W. 766, thus: "It is not essential that defendant could have anticipated the very injury complained of, or that it could have anticipated that it would have occurred in the exact manner in which it did occur, but it is sufficient if the negligence of the defendant was the proximate cause of the injury." In McLeod v. Linde Air Products Co., 1 S. W. (2d) 122, l. c. 126, the court overruled defendant's contention that it was not liable, because it could not have anticipated the injury, and also overruled the appellant's contention that an instruction criticized was error, because it did not require a finding that the defendant anticipated or could have anticipated the injury, for the opinion says, "Appellant's criticisms of the instruction rest on its contentions heretofore overruled."

The instruction now criticised required the jury to find that plaintiff was injured as the direct result of defendant's negligence. This was tantamount to a required finding that defendant's negligence was the proximate cause of the plaintiff's injuries. [Stegemann v. Heil Packing Co., 2 S. W. (2d) 169; Dean v. Railroad, 199 Mo. 386, l. c. 411, 97 S. W. 910; Harrison v. Light Co., 195 Mo. 606, l. c. 629, 93 S. W. 951.]

VI. Defendant criticises plaintiff's Instruction 8 on the measure of damages, because it tells the jury that the award must not exceed the sum of $75,000, the amount sued for. The instruction, however, concludes: "In mentioning the sum the court does not mean for you to find for the plaintiff in this amount, or in any sum, but merely mentions the amount sued for by plaintiff."

We have never held an instruction erroneous for the reason urged, although we may possibly do so in some case, provided in a particular case the instruction worked an injury to defendant. We do not think it did so in this case, in view of plaintiff's broken neck and his permanent inability to labor. The verdict of the jury for $30,000 was supported by the evidence, and the verdict of the jury

in its relation to the evidence is the criterion to guide us in determining whether the instruction worked an injury to defendant in a particular case. [Roads v. Kelleher Drayage & Warehouse Co., 26 S. W. (2d) 764; C. & O. Ry. Co. v. Carnahan, 241 U. S. 241; Lessenden v. Railroad, 238 Mo. 247, 142 S. W. 332.]

VII. Defendant complains of the argument of plaintiff's attorney to the jury. It seems that defendant applied for a continuance because of an absent witness, filing an affidavit of the witness's proposed testimony. Plaintiff admitted, in open court, that the witness would testify as set forth in the affidavit, and the court overruled the application. Plaintiff's counsel argued: "The only witness who says that it was a good board was this witness Huffman, whose statement they read to you here in connection with the application for a continuance. We don't know what he might have said if he had been here in person."

The preceding contention was not mentioned in the motion for a new trial. Obviously, it was not preserved so as to permit us to consider it. [Adams v. Kendrick, 11 S. W. (2d) 16, l. c. 22; Moll v. Pollack, 8 S. W. (2d) 38, l. c. 48.]

VIII. It is averred that the damages, notwithstanding the *remittitur*, are grossly excessive. The proof establishes that plaintiff's neck was broken; that his brain has been injured and his spinal cord and functions have been permanently impaired; that he will never again be able to labor; that he will ever be in pain and agony; that his right arm is paralyzed; and that his condition was that of general exhaustion.

Plaintiff was thirty-three years of age and earning about $1000 a year. A principal of about $17,000 drawing six per cent interest annually, is necessary to support an income of $1000 a year. At plaintiff's age this principal was worth $13,281.84. In addition, he suffered and will continue to suffer pain during his life. His brain is affected and his spine injured. His injuries require a support for his neck. Defendant's contention in this regard must be overruled.

No error appearing, the judgment must be affirmed. It is so ordered. *Henwood* and *Cooley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.